# BRAUNSTEIN v. HOLMES.*

PATENTS; MASTER AND SERVANT; PRINCIPAL AND ASSISTANT; FELLOW EM-
    PLOYEES; PRESUMPTIONS; BURDEN OF PROOF.

1. The rule that where an employer conceives the plan or principle of an invention, and directs his employee to perfect the details, and the employee makes valuable improvements therein, the improved result belongs to the employer applies to principal and assistant, although they are fellow employees of a common employer. (Citing *Robinson* v. *McCormick,* 29 App. D. C. 98.)

2. Where an employee of a powder manufacturing company, having been put in charge of a laboratory of the company to make experiments in certain high explosives, and having made discoveries which ultimately led to a certain invention, was assigned an assistant to aid him in carrying on the work, and the assistant did the work which resulted in reducing the invention to practice, the burden is on the latter, in an interference proceeding between the two in which both claim the invention, to overcome the presumption that what he had accomplished was done under the direction of his principal.

3. In an interference proceeding, the burden is upon the last applicant, as junior party, to establish earlier conception.

No. 441.   Patent Appeals.   Submitted January 17, 1908.   Decided February 4, 1908.

---

*Patents—Master and Servant.*—As to rights of employers and employees in respect to patents, see note to *Barber* v. *National Carbon Co.* 5 L.R.A. (N.S.) 1177.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.            *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles H. Howson* for the appellant.
*Mr. George J. Harding* and *Mr. Frank S. Busser* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding. The decision of the Commissioner affirmed a decision of the Board of Examiners-in-Chief, which, in turn, affirmed a decision by the Examiner of Interferences awarding judgment of priority to the appellee.

On July 21, 1904, the appellee, Fletcher B. Holmes, filed his application, No. 217,503, for a patent on an invention relating to the manufacture of commercial explosives from nitro-starch. The particular issue in interference relates to an explosive consisting of a mixture of nitro-starch and ammonium oxalate. In his preliminary statement Holmes fixed July 1, 1903, as the date of his conception and disclosure of the invention in question, and September 1, 1903, as the date of reduction of the invention to practice. Jesse R. Braunstein filed his application, No. 223,503, for the same invention September 7, 1904. In his preliminary statement, June, 1903, is fixed as the date of his conception of the invention; June or July, 1903, as the date of disclosure; and July, 1903, as the date of reduction of the invention to actual practice.

Holmes is the senior party, and Braunstein the junior party. The issue before us is to determine which of the parties to this controversy is the inventor. Both were employed during the summer of 1903 as chemists in the eastern laboratory, a department of the high explosive division of the Dupont Powder Company. This laboratory was established in 1902 for original experimental work in the production of explosives. It appears from

the evidence that Holmes, shortly after he was employed in the eastern laboratory, was assigned to make experiments in the stabilizing of nitro-starch. This assignment was made in June, 1903. Quoting from the evidence of Holmes, which is not denied: "It had been known for some time that nitro-starch was a powerful explosive, but it was as well known that nitro-starch was exceedingly unstable and liable to spontaneous decomposition. The problem set before me was that of discovering some method by which nitro-starch could be made stable." This defines the class of work to which Holmes was assigned.

Braunstein's employment in the eastern laboratory dated from October 1st, 1902, and consisted of miscellaneous laboratory work until about August 15, 1903. It is contended by counsel for Holmes that the evidence establishes not only the assignment of Holmes to work on the nitro-starch problem, but that prior to September 1, 1903, he had formulated the plan of investigation which led to the invention in question; that about the middle of August the investigation had reached a point where the detail work became so great that it was necessary for Holmes to have an assistant; and that Braunstein was selected from the laboratory force and assigned to assist him.

It is contended by Braunstein that he had been working upon the problem of stabilizing nitro-starch for some months prior to the date of his assignment to assist Holmes, and that, during the time that he was working with Holmes, he revealed to him the results of his investigation, which finally culminated in the discovery here sought to be patented. The evidence, we think, clearly discloses, and, in fact, it was admitted at bar, that the work of reducing the invention to practice was performed by Braunstein. The question at issue, which must be ascertained from an examination of the evidence alone, is whether the means which brought about the results, which are the basis of the claims of the contesting parties for patent, originated in the experiments of Braunstein, or were discovered by Holmes and only put into operation by Braunstein under Holmes's direction.

That Braunstein was assigned to assist Holmes in making

his investigations is established by the evidence of no less than six witnesses. All these witnesses were fellow employees, and the motives that might affect their credibility should be considered; but, considering all the testimony, nothing appears that would justify us in discrediting it. The evidence, we think, therefore clearly establishes the relation of principal and assistant. It is well settled that in the relation of employer and employee, where the employer conceived the principle or plan of an invention, and the employee is directed to perfect the details, though the employee may make valuable improvements therein, the improved results belongs to the employer. The same rule of law, we think, applies to principal and assistant, though they may be fellow employees. This principle of law is one generally recognized by the courts. In *Agawam Woolen Co.* v. *Jordan,* 7 Wall. 583, 19 L. ed. 177, the court said: "Where a person has discovered an improved principle in a machine, manufacture or composition of matter, and employs other persons to assist him in carrying out that principle, and they, in the course of experiments arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general to be regarded as the property of the party who discovered the original improved principle, and may be embodied in his patent as a part of his invention. * * * Common justice would forbid that any partial aid rendered under such circumstances, during the progress of experiments in perfecting the improvement, should enable the person rendering the aid to appropriate to himself the entire result of the ingenuity and toil of the originator, or put it in the power of any subsequent infringer to defeat the patent under the plea that the invention was made by the assistant, and not by the originator of the plan." This court, in the case of *Robinson* v. *McCormick,* 29 App. D. C. 98, in referring to this rule, said: "The reason of this rule is obvious. Inventors are often compelled to have their conceptions embodied in construction by skilled mechanics or manufacturers, whose practical knowledge often enables them to suggest and make valuable improvements in simplifying and per-

fecting machines or devices. These are things they are employed and paid to do. The inventor is entitled to protection from their efforts to claim his invention."

Braunstein being the assistant and the junior applicant, the burden is placed upon him of establishing the fact that he possessed a knowledge of this invention independent of any suggestion he may have received from Holmes after he was assigned to assist him. His own testimony is the only positive evidence offered to establish this very important point, upon which the rights of the parties to this action depend. Braunstein called two witnesses (Heard and Souder) to establish his disclosure of the invention prior to his assignment to assist Holmes. Quoting from the opinion of the Board of Examiners: "Neither witness refers to ammonium oxalate. Heard testifies that about the 1st of May, 1903, Braunstein spoke to him about a stable nitro-starch powder, and that some time later, at a time which he does not remember, Braunstein spoke to him concerning the nitro-starch problem, and stated that he had tried ammonium carbonate as a stabilizing agent. There is no disclosure of the idea of using ammonium oxalate specifically and the date of the disclosure, such as it was, is uncertain. The disclosure to Souder amounts to nothing more than a statement by Braunstein to Souder that Braunstein was working on a process of making nitro-starch stable. Braunstein also states that in June or July, secretely, without disclosure to anyone, he made some experiments "which embody this invention." After a careful examination of the testimony of these witnesses, we have no reason to question the correctness of the conclusions of the Board of Examiners.

Thus it will be observed that on this crucial point Braunstein stands uncorroborated. Aside from his own evidence, he is not shown to have had any conception of the invention at the time he came to the assistance of Holmes. Braunstein claims that he disclosed the invention to Holmes after he came to his assistance; but four witnesses, whose relations to the work being accomplished in the laboratory placed them in a position to know what Holmes was doing, testify that the plan

of testing the ammonium compounds as stabilizing agents had been conceived by Holmes prior to the time of Braunstein's assignment as his assistant.

The contention is here made on behalf of Braunstein that, inasmuch as it is conceded that he did the work which resulted in reducing the invention to practice, the burden is upon Holmes to prove that he suggested to Braunstein the means by which the result could be attained. We think that the evidence discloses that Holmes was assigned to make the investigation that resulted in the invention, and when he had proceeded to a point where he had made important discoveries along the line that ultimately led to the invention, Braunstein was assigned to assist him in carrying on the work. With Braunstein occupying the position of assistant to Holmes, the burden is upon him to overcome the presumption that what he accomplished was done under the direction of Holmes. Holmes being the first in point of time to file his application for patent, and thereby assert his right to the invention here in controversy, the burden rests with Braunstein, as junior applicant, to establish his earlier conception of the invention and his right to a patent thereon. It was the opinion of the three tribunals of the Patent Office that appellant had wholly failed to discharge that burden. After a careful analysis of the evidence, we agree with that conclusion. We are of the opinion that the evidence clearly discloses that the invention in question was conceived by Holmes and reduced to practical operation by Braunstein while working under the direction of Holmes.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify the proceedings, as required by law.                                              *Affirmed.*