## LAUGHLIN v. BURRY.

(Court of Appeals of District of Columbia. Submitted November 15, 1920.
Decided February 7, 1921.)

No. 1353.

1. Patents ☞91(4)—Evidence held to show junior party to interference disclosed invention to senior party.

In an interference proceeding in the Patent Office, involving an invention relating to side bearings for railroad cars, evidence held to show that the junior party disclosed the invention to the senior party in connection with negotiations with the senior party's employer and subsequent assignee.

2. Patents ☞90(7)—Party to interference proceeding disclosing generic claims of issue held entitled thereto and not limited to specific form.

Where the junior party to an interference proceeding involving side bearings for railroad cars had disclosed to the senior party an embodi-

ment of the generic claims of the issue, he was entitled to the broad generic claims, and not limited to any specific form or arrangement.

**3. Patents ⊙—93—One. conceiving invention and employing another to work out details entitled to the result.**

Where one conceives an invention and employs another to work out the details of the general conception, the result belongs to the employer.

**4. Patents ⊙—211 (3)—Inventor,. by obtaining license from patentee, not estopped to assert rights.**

Where a party to an interference proceeding, before the corporation of which he was president obtained a license to manufacture the device covered by the other party's patent, had taken steps to apply for a patent, the license did not estop him from claiming the invention, but was justifiable for the protection of his interests.

**5. Patents ⊙—113 (7)—Concurrent decisions in favor of same party not conclusive, when not concurring on facts or conclusions.**

The rule that the court will hesitate to disturb concurrent decisions of the Patent Office did not apply, where they did not agree on the facts, or the conclusions to be drawn therefrom, though all awarded priority to the same party.

**6. Patents ⊙—91 (1)—Delay in applying for patent until after grant to another held to create no unfavorable presumption.**

The delay of an inventor in applying for a patent until four months after the issue of the patent to another claimant of the invention created no presumption in favor of the patentee, where the delay was due to an informal arrangement with the patentee's employer for joint ownership, and as soon as it became apparent that the employer would not carry out the agreement he took steps to protect his rights and applied for a patent.

Appeal from a Decision of the Commissioner of Patents.

Interference proceeding in the Patent Office between Elmyr A. Laughlin, junior party, and Vincent J. Burry, senior party. From a decision in favor of the senior party, the junior party appeals. Reversed.

Joshua R. H. Potts and Brayton G. Richards, both of Chicago, Ill., for appellant.

R. D. Totten, of Pittsburgh, Pa., for appellee.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents awarding priority of invention to appellee, Burry, for an invention relating to side bearings for railway cars. The issue is in seven counts, of which the following are illustrative:

"1. A bearing device comprising upper and lower housings or bearing plates vertically movable the one with relation to the other and having plain bearing faces, a plurality of rollers interposed between said plates and means on said plates and said rollers to maintain the rollers constantly spaced at the same distance apart and constantly centered with respect to the application of the load."

"7. In a bearing device, the combination with upper and lower bearing plates vertically movable the one with relation to the other and having plain bearing faces forming runways and each having a slot arranged in a vertical plane, a pair of bearing rollers interposed between said bearing plates, said rollers being provided at the end with one or more lugs adapted to engage said slots, said slots being so formed as not to interfere with the rotation of said rollers, but to guide the same to centered position beneath the point of application of the load at all times, and also to maintain the rollers in substantially centered position when the car is tilted and the rollers are out of engagement with one or the other of said upper and lower bearing members."

⊙—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The invention is described in the opinion of the Examiners in Chief as follows:

"The invention relates to side bearings for railway cars and consists essentially in the provision of rollers having plain bearing faces, located between housing parts on the under side of the car body and upper side of the track, respectively, the rollers being provided with laterally extending trunnions which engage raceways in side extensions of the housing. The raceways are designed to cooperate with the trunnions to permit the lifting of the car body, as in rounding a curve, while at the same time maintaining the rollers properly spaced apart and centered with respect to the load."

[1] The case turns largely upon the question of originality. Appellant, Laughlin, in November, 1914, was president of the Joliet Railway Supply Company of Chicago. He was 35 years old, and had been engaged for 16 years in the manufacture and sale of railway supplies. He has obtained six patents on side bearings which have been in general use. Laughlin conceived the idea of inventing a car mounting in which the load would be carried on side bearings. This he termed the side bearing truck, as distinguished from a side bearing which only bears the load in emergencies. Laughlin took up the matter of the invention with one Turner, superintendent of motive power for the Pittsburgh & Lake Erie Railroad Company, with headquarters at Pittsburgh. Turner appears here as the assignee of the Burry patent. Laughlin and Turner were on intimate business terms, growing out of the use of Laughlin's bearings by the Pittsburgh & Lake Erie Railroad.

Upon the invitation of Laughlin, Turner made a trip to Laughlin's home at Oregon, Ill., where the details of the present invention were discussed and an oral agreement entered into between Laughlin and Turner that they would share equally in the invention. It was then that Turner suggested to Laughlin that he had a young man by the name of Burry working under him as chief draftsman in the mechanical department of the Pittsburgh & Lake Erie Railroad, who could render valuable assistance in working out the details of the invention. As a result of this suggestion, Burry went to Chicago, and Laughlin laid before him his plans for developing the invention. Burry returned to Pittsburgh with Laughlin's drawings and certain models which Laughlin had prepared. Later, when Burry reached a point where he needed further assistance, he made a trip to Laughlin's home, where he spent several days with Laughlin in working upon the details of the invention. Burry returned to Pittsburgh, where bearings were constructed and placed upon the cars of the Pittsburgh & Lake Erie Railroad Company and tested out, which test demonstrated the complete success of the invention. Burry made application for a patent February 17, 1916, and a patent was issued thereon July 18, 1916.

When Laughlin began pressing Turner for a written contract setting forth their agreement as joint owners of the invention, his suspicions were first aroused that Turner was planning to appropriate the invention to his own benefit. It was then that he made application for the patent, which resulted in the present interference. The evidence in the case is somewhat complicated, but depends largely upon a long series of correspondence between Laughlin, Turner, and Burry, which overwhelmingly establishes the contract between Turner and Laughlin

and the fact that Burry was called, in merely as an employee to help work out the details of the invention.

That Laughlin disclosed the invention to Burry at the meeting in Chicago, we think, is clear. Blueprint Exhibit 6, which Laughlin gave to Burry, disclosed all the elements of the issue, except that the lower surfaces of the rockers are shown to have teeth, where as the issue calls for plain surfaces, both above and below. However, model rockers (Laughlin's Exhibits 1, 2 and 3), which Burry admits were explained to him in connection with Exhibit 6, show a plain surface at the top, the teeth at the bottom being removable, which would suggest the use of a smooth surface. This strongly corroborates Laughlin's testimony that they were so constructed in order that they could be tested both ways, and his testimony is to the effect that they were so tested. It is also significant that these rockers were provided with lugs or trunnions to co-operate with the side guides to prevent displacement.

Laughlin also testified that the use of the smooth surface was discussed at his meeting with Burry. While Burry denies this, it is inconceivable that Laughlin should have explained to Burry the rockers with removable teeth in connection with Exhibit 6, and made no reference to their use without the teeth. That this feature was discussed by them, as Laughlin testifies, is emphasized by the fact that Burry returned to Pittsburgh and immediately set about to work out the details of the invention with plain surface bearings. It is also significant that Burry, in his preliminary statement, alleges that he conceived the invention in issue the first week in January, 1916, or a little over a week after the Chicago meeting, although admitting under oath that he had never invented anything before or since. All the circumstances corroborate Laughlin and refute Burry. It must also be remembered that, the relation of employer and employee having been established, the burden shifts heavily upon Burry. Gedge v. Cromwell, 19 App. D. C. 192; Miller v. Kelly, 18 App. D. C. 163.

[2] It is true that Laughlin's original conception, as disclosed by Burry, showed a slightly different arrangement of the side trunnions from that disclosed by Burry in his application for patent. But the issues broadly cover:

"Means on said plates and said rollers to maintain the rollers constantly spaced at the same distance apart and constantly centered with respect to the application of the load."

It is clear that Laughlin disclosed to Burry an embodiment of the generic claims of the issue. He is not, therefore, limited to any specific form or arrangement, but is entitled to the broad generic claims.

[3] It is well settled that, where one conceives an invention and employs another to work out the details of the general conception, the result belongs to the employer. Milton v. Kingsley, 7 App. D. C. 531, 537; Miller v. Kelly, 18 App. D. C. 163, 170; Gedge v. Cromwell, 19 App. D. C. 192, 198; Gallagher v. Hastings, 21 App. D. C. 88, 99; Flather v. Weber, 21 App. D. C. 179; Kreag v. Geen, 28 App. D. C. 437. In the Kreag Case, the court announced the rule as follows:

"The relation of employer and employee once established, the law is well settled that when one conceives the principle or plan of an invention, and employs another to perfect the details and realize his conception, though the

latter may make valuable improvements therein, such improved result belongs to the employer."

[4] Much is attempted to be made of a license to manufacture the Burry bearing granted to Laughlin, Clark & Co. on November 23, 1916. Laughlin was president of this corporation, and it is claimed that, in the light of this transaction, he is estopped from claiming the invention. It is not clear how the contract between Turner and Burry and this corporation can estop Laughlin from contesting Burry's right to the patent, especially in the light of the facts disclosed by the record. Laughlin filed his application four days after this contract was made. We may assume that the application had been in the hands of his attorneys at least since his discovery of Turner's duplicity, which date is fixed by a letter sent by Laughlin to Turner October 5, 1916, in which he states:

"'Your favor of the 3d forwarded to me here, and I thank you for your frankness. I evidently have misunderstood the situation. It was always my understanding that whatever was developed in the way of a truck, from my suggestions to you and Mr. Burry, and whatever I developed from your suggestions, was to be 'joint property,' as between you and me. You have my written word to this effect."

Laughlin had already taken steps to protect his rights, and the contract thereafter entered into by the corporation in which he was interested could not be taken as an admission that he had no claim to the invention. This court, in Winslow v. Austin, 14 App. D. C. 137, 143, considering the effect of an assignment of an interest in the Winslow patent to Austin, said:

"On this state of the case, the Board of Examiners in chief, on appeal to them, and the Commissioner of Patents, on appeal to him, appear to have had no difficulty in reaching the conclusion that Austin had fully made out his claim to priority of invention, and he was accordingly awarded such priority. The conclusion of the Examiner of Interferences was in favor of Winslow, but his conclusion was largely based upon the prima facie effect secured to Winslow by his position of senior party upon the record, and upon the fact of the assignment taken by Austin from Licht & Keeney of interest in the Winslow patent. And there is unquestionably considerable force in this latter fact. But this fact, we think, ought not to be taken as an admission on the part of Austin that he in reality and truth had no claim to the invention involved in the present issue, and that the sole and exclusive right as inventor was in Winslow. As very properly said by the Examiners in Chief, he may have obtained the assignment as an easy way to quiet a contest, or in order to combine in himself all adverse claims to the contested invention."

It will be observed that, even if Laughlin had personally accepted a license under the Burry patent, it would only bring him squarely within the Winslow Case. But the license was granted to a corporation in which Laughlin was interested, and the negotiations, as shown by the record, were carried on entirely by Clark, its vice president. However, as in the Austin Case, any interest that Laughlin may have acquired through this transaction was justifiable, inasmuch as he had the right to protect his interests by acquiring use of the patent to any extent that he might desire.

[5] This is not a case where the court will hesitate to disturb the concurrent decisions of the Patent Office, since no two of them agree

either upon the facts or the conclusions to be drawn therefrom. The Examiner of Interferences found that the distinguishing feature of the issue consists of "bearing-plates vertically movable, the one with relation to the other, and having plain bearing surfaces"; that Burry was not in the employ of Laughlin; that, when Burry visited Laughlin, the disclosures made by Laughlin all showed bearing surfaces with teeth; and that Laughlin's knowledge of Burry's license arrangement with Laughlin, Clark & Co. estopped him from claiming the invention.

The Board of Examiners in Chief held that Burry was in the employ of Laughlin; that Laughlin disclosed to Burry vertically movable bearing plates, both with and without plain bearing surfaces; that Laughlin was not estopped by the license to Laughlin, Clark & Co., but that the distinguishing feature of the invention resided in the specific arrangement of the side trunnions and raceways as shown by Burry; and that, on this point alone, Burry was entitled to prevail.

The Commissioner held that Laughlin disclosed nothing to Burry that did not belong to the prior art, hence it was immaterial whether Burry was in Laughlin's employ or not, and that Laughlin's actions, after he discovered Burry had applied for a patent, were inconsistent with the claim of the existence of a fiduciary relation between them.

[5] The delay of Laughlin in applying for a patent after Burry's patent was issued creates no presumption in Burry's favor or against Laughlin, since the correspondence discloses clearly that Laughlin was relying upon Turner to enter into a formal contract in pursuance of the oral agreement originally made between them, and, as soon as it became apparent to Laughlin that Turner would not carry out his agreement, he took steps to protect his rights through an application for patent. In any event, his application was made four months after the issue of the Burry patent, and this, considering the negotiations he was carrying on with Turner, cannot be held to be an unreasonable delay. It was Laughlin's reliance upon his agreement with Turner and his fiduciary relation with Burry that lulled him into inactivity during the period when Burry was securing his patent. As soon as Laughlin discovered the scope of Burry's patent, he at once insisted upon his rights, both under his agreement with Turner, and by taking steps to assert his claims in the Patent Office. The conspiracy of Turner and Burry to repudiate their contract and to appropriate to themselves the whole benefit to be derived from this valuable invention, cannot be employed by them to the disadvantage of their victim.

The improvement involved, in view of the prior art, is a narrow one, and consists, in our opinion, of a combination of the features specified, only in conjunction with plain bearing surfaces. This is emphasized from the rejection of the Burry application until he limited his claim to plain bearing surfaces. The conclusion, therefore, is irresistible that the distinguishing feature of the issue consists in the vertically movable bearing plates with plain bearing surfaces; that this was broadly disclosed to Burry at his first meeting with Laughlin, and that whatever Burry did was merely ancillary in specifically carrying into effect the generic disclosure of his employer.

The decision of the Commissioner of Patents is reversed.

Reversed.