## OWENS v. SPONABLE.

### Patent Appeal No. 3258.

Court of Customs and Patent Appeals.
April 2, 1934.

Philip S. McLean, of New York City, for appellant.

Denison & Thompson, of Syracuse, N. Y. (Eugene A. Thompson, of Syracuse, N. Y., and Newton A. Burgess, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal by the senior party, Owens, from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences awarding priority of invention to the junior party, Sponable, as to all the counts, twelve in number, involved in the interference.

The subject-matter of both applications concerns a holder for a light slit which emits the light from a sound recording lamp to the picture film which is passed over said slit. In the prior art, the glass containing the narrow light emitting slit was mounted in the holder at one end of the tube containing the sound recording lamp, by the use of wax or cement, which mounting gave a certain degree of resiliency. It was found that, when the film passed over the thin glass containing the slit, owing to the delicate nature of the device and the unevenness of the film, the glass would break and the film would be torn.

The Owens application was filed on January 3, 1927, and the Sponable application was filed on March 29, 1927.

The chief question in the case is one of originality. Both are claiming the same device as constituting their respective reductions to practice.

Sponable was chief engineer and director of all research work on sound recording and producing devices for the Fox Case Corporation. In April, 1926, Sponable employed Owens, a skilled worker in the motion and sound picture art, to work in said Fox Case Corporation research laboratories on sound recording and reproducing devices. Owens took his instructions from Sponable. The record shows that on September 24, 1926, Sponable told Owens he would like to have him build a head for a tube in which the slit unit was resiliently supported. Sponable did not suggest the exact manner in which the head was to be made more resilient than the wax mounting heads of the prior art. On the same date Sponable disclosed the invention to one Wall. Sponable's and Wall's testimony is to the effect that Sponable explained the invention to Wall, stating that it was desirable to prevent the breaking of the slit mountings and that it was necessary to make the mountings more resilient.

Owens, carrying out the directions he had received from Sponable, made a substitute mounting, which is Sponable's Exhibit 4 in this case, and in which the slot holder or slot shoe is made resilient by having curved springs placed behind it. As far as the issues here are concerned, the complete result of Owens' work was the placing in the slot below the slit holder of small curved springs which have the tendency of forcing the slit holder outwardly against the film and to thereby permit a floating motion of the holder.

Owens contends here that he conceived the invention on May 3, 1926, and disclosed the same to Sponable, on that date, in a letter. He claims to have reduced the same to practice by the construction of the device above described. He introduced in evidence certain notes and drawings from a diary which he claims to have kept. Owens' Exhibit E is dated September 23, 1926, and discloses the spring but does not disclose the downwardly inclined front face of the head. The exhibit is signed by Harry Schrillo under date of September 25, 1926. Owens states that his drawing, which was made on September 23, 1926, was, by himself, mailed to himself on September 25. Schrillo was a mechanic working with Owens. It will be here recalled that the date Owens claimed to have made the drawing was on September 23, the day before the conceded date upon which Sponable instructed Owens to make a resilient mounting, and that Schrillo's signature is alleged to have been entered on the day after the date when Sponable instructed Owens to make said device.

The Examiner of Interferences and the Board of Appeals both found that Sponable was the first inventor of the subject-matter of all the counts. The Board declined to discuss the different specific features of the counts for the reason that both parties rely upon the same reduction to practice.

In this court, Owens stresses his proof of his conception of the invention on the 3d day of May, 1926. This proof consisted of his own uncorroborated testimony of a letter he claims to have written to Sponable on that date, telling Sponable of the spring construction of the holder. Owens introduced in evidence a letter, dated May 5, 1926, signed by Sponable, touching several different features of the sound recorder. In that letter Sponable stated that he believed that mounting the slit with wax as they had been doing would be the most satisfactory and that it would be practically impossible to hold it with any sort of tension arrangement. There is no corroboration of Owens' testimony that he wrote or mailed the said letter on May 3. The letter of May 5, written by Sponable to Owens, begins: "Answering your recent letters, as I advised you by telephone yesterday the photoelectric cell need not be in a copper jacket [etc.]"

Aside from a number of considerations which render Owens' testimony of a conception of the invention as early as May 3 unconvincing, it is contrary to his preliminary statement. In his preliminary statement he alleges that he conceived the invention on September 23, made his first written description thereof on the same date, and also on the same date first explained the invention to others; that he embodied the invention in a full-sized machine which was completed on October 18, 1926.

We think a fair consideration of the record is convincing that Owens on the 24th day of September, 1926, was in the employ of Sponable for a weekly wage, and that on that date Sponable pointed out the problem of the slit holder and suggested its solution by directing that Owens make the same more resilient than the wax mounting, and that, in pursuance to said instructions, Owens placed the small curved springs behind the slit holder. Upon the record before us, we think Sponable is the first inventor of the subject-matter of all the counts at bar and is entitled

to an award of priority thereon. Some of the counts, such as counts 1 and 5, do not call for any resilience in the holder. The subject-matter of these counts is disclosed by Sponable's Exhibit 2, which was in operation long before Owens began to work for Sponable.

■ While Sponable did not specify to Owens any definite construction to make the mounting resilient, his solution of the problem was the making of it resilient, and the placing of the springs behind the mounting, as we see it, under the circumstances of this case, was the result of the mechanical skill of Owens which was in the line of his duty under his employment. The result of such mechanical work on the part of Owens belonged to Sponable.

■ It is well settled law that the Patent Office tribunals and the courts will view with suspicion the evidence produced by an employee who seeks to claim an invention made during the time he is working for another and which involves the subject-matter upon which he was employed to work. The burden is upon him to clearly prove that he and not the employer was the first inventor of the subject-matter. A case in point is De Forest v. Owens, 49 F.(2d) 826, 829, 18 C. C. P. A. 1424, in which the appellee is the same party as the senior party in the instant appeal. The question there was one of originality where the relation of employer and employee existed. We there said:

" * * * When an employee claims to have made an invention, which is within the scope of his employment, and made while so employed during the working hours for which he is receiving pay, his claim that he, and not the employer, independently and separately made the invention, is to be examined with great care, and will not be accepted, unless the proof clearly shows that he and not the employer, was the first inventor of the subject-matter. If he is to be regarded as the inventor, he must show that the invention was not made in pursuance to the guidance and instructions of the employer. [Here follows the citation of authorities.]

"The temptation of the employee to gain knowledge while working under the skilled guidance of another and then to seek to capitalize such knowledge by betraying his trust and seeking a patent for himself is always great and too frequently occurs. The likelihood of such conduct on the part of an employee is always increased where the knowledge of the subject-matter is confined to only a few people. To place no burden of proof upon the employee and the whole burden upon the employer, under such circumstances as are at bar, would be inequitable, and would have the tendency toward increasing the likelihood of bad faith on the part of the employee rather than to encourage loyalty and honest service."

In Fritz v. Hawn, 37 F.(2d) 430, 17 C. C. P. A. 796, a situation quite similar to the present one existed, and the court there held that the relation of employer and employee existed between Fritz and Hawn and that Hawn was not entitled to successfully claim, as against Fritz, a patent based upon the result of his labor while working under Fritz.

We agree with the decision of the Board of Appeals to the effect that the relation of employee and employer existed between Owens and Sponable; that Sponable first conceived the idea of solving the slit holder problem by mounting the same resiliently and made a disclosure of this idea to Owens; and that such details as Owens may have supplied are ancillary thereto and constituted a carrying out only of the inventive idea of Sponable. In this connection the cases of Agawam Co. v. Jordan, 7 Wall. 583, 603, 19 L. Ed. 177; Braunstein v. Holmes, 30 App. D. C. 328; Huebel v. Bernard, 15 App. D. C. 510; and Laughlin v. Burry, 50 App. D. C. 273, 270 F. 1013, are pertinent.

In the Agawam Co. Case, supra, which is a pioneer case on the question, and which has been frequently cited by various courts, it is said:

"Persons employed, as much as employers, are entitled to their own independent inventions, but where the employer has conceived the plan of an invention and is engaged in experiments to perfect it, no suggestions from an employee, not amounting to a new method or arrangement, which, in itself is a complete invention, is sufficient to deprive the employer of the exclusive property in the perfected improvement. But where the suggestions go to make up a complete and perfect machine, embracing the substance of all that is embodied in the patent subsequently issued to the party to whom the suggestions were made, the patent is invalid, because the real invention or discovery belonged to another."

The above language says "the real invention or discovery belonged to another." In view of the fact that it is urged that there is a distinction between who owns the invention and who is the inventor, it is important to note that earlier in the Agawam Co. Case, supra, the court made the following statement:

" * * * Such suggested improvements are in general to be regarded as the property of the party who discovered the original improved principle, *and may be embodied in his patent as a part of his invention.* * * * "
(Italics ours.)

In Kreag v. Geen, 28 App. D. C. 437, 440, a case similar to the one at bar, the court said:

" * * * The relation of employer and employee once established, the law is well settled that when one conceives the principle or plan of an invention, and employs another to perfect the details and realize his conception, though the latter may make valuable improvements therein, such improved result belongs to the employer."

The cases of Braunstein v. Holmes, Huebel v. Bernard, and Laughlin v. Burry, supra, are to the same effect.

The decision of the Board of Appeals, affirming that of the Examiner of Interferences, in awarding priority of invention in the involved counts to Earl I. Sponable, the junior party, is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.