**RIEHM v. HAMBLETON (two cases).**

Nos. 1746, 2509.

District Court, D. Massachusetts.

Dec. 21, 1943.

·Cedric W. Porter, George P. Dike, Dike, Calver & Porter, and Leland Powers, all of Boston, Mass., for plaintiff.

Gardner W. Pearson, of Lowell, Mass., for defendant.

SWEENEY, District Judge.

This opinion will deal with two actions which were consolidated for trial. The first seeks to restrain the defendant from the use of a device which the plaintiff claims he invented, and further demands an accounting for profits and damages. The second action is in the nature of a bill in equity as authorized by 35 U.S.C.A. § 63, to review the decision of the Board of Interference Examiners of the Patent Office which awarded priority of invention between these same parties to the defendant Frederick Hambleton. (See Patent Interference No. 79,700, dated October 7, 1943.) Since both actions turn on the question of the origin of the invention they will be treated herein as one.

Findings of Fact

The plaintiff is a mechanical engineer with a wide and varied experience in machinery · designed for paper manufacture and other types. Prior to his employment by the H & P Spool and Bobbin Company, he had little or no experience with machinery designed for cotton and woolen mills. The H & P Spool and Bobbin Company was a partnership which in 1937 was composed of Frederick Hambleton and William T. Prescott. Prescott died on May 5, 1941. Thereafter, Frederick Hambleton, having bought out the Prescott interest, continued the business under the old name, until his death on November 18, 1941. Thereafter, Herbert L. Hambleton, as executor of the estate of Frederick Hambleton, continued the business until his own death on March 19, 1943. Since then his executrix has operated it.

In September, 1936, the plaintiff applied for a position with the defendant concern by letter in which he specified that he did not want an executive job, but wanted to "work right at a lathe". As a result of this letter the defendant hired the plaintiff, and he commenced working at the plant early in January, 1937. His job, in conjunction with one other mechanic, was to keep the machines in good order, and as part of his work he was assigned to the job of attempting to solve the problem of providing automatic feed to a Choquette machine. A Choquette machine operates to place several steel rings on the base of a bobbin. When the defendant's machine was purchased the rings had to be fed to the machine manually. A long rod strung with rings was hung in close proximity to the operator, and he had to place them in the machine with his hands. If an automatic feed for the machine could be provided, it could save considerable time as the rings likewise had to be placed on the supply rods manually.

Frederick Hambleton showed Riehm a device which he was then working on

which embodied a conveyer belt with pins on its upper surface which were utilized to pick the rings out of a ring supply box and convey them to a tubular receiver. This device could not be made to work successfully, and was soon rejected.

Thereafter Riehm worked on a device which he termed a dial feed arrangement. A rough drawing of this device discloses a horizontally revolving hopper which dropped rings into the receiving tube as it passed over the upper open end of the tube. This device could not be successfully operated, and was rejected principally because the rings, as they dropped into the receiving tube, would jam. It is interesting to note that this device did not have a floating pin within the tube. Some reference will be made to the floating pin in the discussion of the patented device. Whether or not the dial feed arrangement would have been entirely satisfactory is unknown, but it would have taken nothing beyond meagre mechanical skill to have avoided the jamming in the tubular receiver by the use of a floating pin. The only importance of this device is to negative the idea that Riehm at that time knew of a floating pin on which much of the success of the patented device depends. In any event the dial feed arrangement was soon rejected.

The next attempt to solve the automatic feed problem resulted in the device in question. This device provided automatic feed by the use of a vertically revolving disc which was provided with four slightly curved radial arms. As this disc revolved the radial arms coming in contact with the loose rings in a hopper or supply box picked them up and carried them to a designated point where they were discharged into the receiving tube. To provide sufficient stoppage in the revolution of the disc so as to permit the discharge of all of the rings on the arm an intermittent revolving movement of the disc was provided by use of a Geneva motion. As the rings were discharged from the radial arm into the tubular receiver they fell about a floating pin which was placed inside of it.

The mechanical elements of the device were the disc with its radial arms, the intermittent revolving of the disc by a Geneva motion, and the receiving tube with a floating pin therein.

As I understand the plaintiff's claim, it is to the effect that he conceived the idea of, and built, a disc with radial arms; that he adapted the Geneva motion from a similar one that was in existence in the defendant's factory on a drilling machine, and that he conceived the idea of, and built, the floating pin, and that he alone worked out the practical result of adapting these three mechanical elements to the device in question.

Riehm's employment continued with the H & P Spool and Bobbin Company until August, 1937, when he was discharged. In December of that year Frederick Hambleton applied for a patent on the device in question, and it was granted on September 17, 1940. Riehm had taken no step up to this time to apply for a patent, and first learned sometime in September or October of 1940 that the device in question had been patented. Although Riehm testified that he immediately sought legal advice in the matter, the first formal step that he took was in September of 1941, when he filed an application in the Patent Office for interference with the Hambleton patent. In January of 1942 Riehm filed the action in this court for the injunction and damages.

Long before Riehm entered the employ of the H & P Spool and Bobbin Company, Frederick Hambleton had experimented with a revolving disc with arms. He had actually built a hand operated disc, and had been observed by a number of people using it in the ring box to pick up rings. Apparently he had not been successful with this device, and had earlier discarded it in favor of the conveyer belt with pins. This experimental use by him in years previous to Riehm's employment negatives the idea that this mechanical element was the invention of Riehm. I therefore conclude and find that Riehm was not the originator of the revolving disc with radial arms to pick rings out of a hopper.

As to the Geneva motion, I do not understand that Riehm claims to have conceived the idea of the Geneva motion. I do understand, however, that Riehm claims that he adapted the Geneva motion to the device in question from a study of a drilling machine in the defendant's premises which had a Geneva motion. As that element is understood, it is merely the designed interruption of a revolution which is effected by broken gears or other simple mechanical control. It was necessary in the device in question to provide intermittent rotation of the disc, so that the radial arms would have enough time to discharge the rings into the tubular receiver. It is interesting to note that the Geneva motion was disclosed in

Patent No. 1,793,285, issued on February 17, 1931, to M. W. Hambleton. This patent was in the possession of Frederick Hambleton before 1937, when Riehm first entered his employ. Whether or not the plaintiff makes claim for it, from the above I conclude and find that Riehm did not originate the Geneva motion or intermittent rotation.

The other mechanical element of the device in question is the floating pin. It is merely a piece of wood about the thickness of a broom handle with metallic ends. The use of metal on the ends of the pin is to avoid heavy wear where the pin comes in contact with the metal rings or the metal base of the machine. The pin is positioned on the inside of the receiving tube so that when the rings fall into the tube they encircle the floating pin and are persuaded by it to assume a horizontal position. This avoids the clogging and jamming which results from the rings falling into the tube in many different positions. As I understand the plaintiff's claim, he says that he first conceived the idea of utilizing the floating pin in the tubular receiver. I again call attention to the fact that in his next prior experiment with the dial feed arrangement Riehm did not use the floating pin in that device's receiving tube, so that if he conceived the idea of the floating pin, he did it at the time that the device in question was being constructed. His belief that he originated this mechanical element undoubtedly is sincere, but the evidence is clear that he was not the first one who conceived this arrangement, for reference to the M. W. Hambleton patent, No. 1,793,285, issued on February 17, 1931, discloses clearly the use of a floating pin in a receiving tube. I therefore conclude and find that Riehm did not originate the floating pin element.

At the trial of these cases Riehm produced an original scaled drawing, dated January 31, 1937, which is sufficiently similar to the drawing disclosed in the Hambleton patent, and which is enough earlier than the Hambleton application to raise the question of originality as between the two parties. But, in the light of the evidence produced at the trial, I must reject the claim of Riehm that he is the actual inventor. In spite of this finding, I do not believe that Riehm is consciously attempting to appropriate a device which was really the invention of another. I do not doubt that he made the drawing referred to on January 31, 1937, but I think that he mistakenly believes that on the basis of this drawing and the reduction of the idea to practical results he is entitled to the patent on this device. There can be no question that he was hired by Hambleton to work at least in part on solving the problem of automatic feed to the Choquette machine. That Hambleton worked with him in solving this problem is sure, for the device as it was perfected shows the adoption of two mechanical elements that were both known to Hambleton before he met Riehm. I am convinced that Hambleton disclosed his knowledge to Riehm, and asked Riehm to produce the practical result. Hambleton knew of the revolving disc to pick up the rings and the floating pin to avoid clogging. He asked Riehm to co-ordinate these two elements. In his drawings and experiments Riehm did this adding the Geneva motion, which was old and well-known, to allow for intermittent rotation. Then Riehm put in drawing on paper the ideas of Hambleton. A great deal of credit must be given to Riehm for the workable result that was turned out both as the result of his drawings and the application of his high mechanical skill, but I cannot extend this credit to the extent of awarding to Riehm the conception of the idea and the invention itself. That, undoubtedly, was Hambleton's, and the very nature of Riehm's employment called for the production by him of the workable result. Hambleton for years had been attempting to provide an automatic feed. He disclosed to Riehm what steps he had taken and what elements he had used in the past in his attempts to solve the problem. It is impossible to believe that Riehm within such a short time after his employment, and after his failure with the dial feed would have thought of both the revolving disc, and the floating pin without Hambleton's having disclosed it to him, for both were clearly within the knowledge of Hambleton before he met Riehm.

Then, too, there is Riehm's unexplained neglect in attempting to have what he terms his invention patented until long after he had left the employ of Hambleton, and, in fact, a patent had issued to Hambleton. If, when he terminated his employment with Hambleton in August, 1937, he felt that he had conceived and produced a new invention, why did he make no demand on Hambleton to cease using his invention, or to respond in damages, or why did he not seek a patent? His attempts to ex-

plain his delay are not convincing, for, assuming that he was content to await Hambleton's forcing the issue on the question of patentability, he does not explain why he allowed Hambleton the use of his device between August, 1937 and September 1940, when he learned that a patent had issued to Hambleton. Although Riehm did some work on his drawings at home, the bulk of his work was done at the H & P plant. In fact, it was part of his job to develop the automatic feed. The relationship between Riehm and Hambleton was that of mechanic and employer. The evidence presented by Riehm has fallen far short of overcoming the presumption that where such a relationhip is found the employer is presumed to be the inventor until the contrary is proved by clear preponderance of competent, credible and satisfactory evidence. See Larson v. Crowther, 55 App.D. C. 58, 1 F.2d 761, DeForest v. Owens, 18 C.C.P.A., Patents, 1424, 49 F.2d 826, and Owens v. Sponable, 21 C.C.P.A., Patents, 992, 69 F.2d 650, 652.

### Conclusions of Law

(1) I rule that the device shown in patent No. 2,214,814 is the invention of Frederick Hambleton. (2) The award of priority to Frederick Hambleton by the Board of Interference Examiners under date of October 7, 1943, is affirmed. Judgment is to be entered for the defendant in both cases.