## LARSON v. CROWTHER.

(Court of Appeals of District of Columbia. Submitted May 12, 1924. Decided October 6, 1924.)

Nos. 1656, 1657.

**1. Patents ⊜91(1)—Employee had burden of proving that he and not employer conceived invention.**

In interference proceeding between former employer and employee, the employee, though senior party, had burden of proving by competent credible evidence that the conception definitely evolved by experiments was his, and not that of employer.

**2. Patents ⊜93—Inventor must be reasonably safeguarded against betrayal of faith reposed by him in employee.**

Relation between inventor and mechanic employed by him is one of high trust and confidence, and inventor must be reasonably safeguarded against betrayal of the faith reposed by him in employee, and against a misuse of information confidentially acquired.

**3. Patents ⊜91(1)—Employer prima facie entitled as against employee to patent invention.**

It is prima facie, but strongly, presumed that employer, and not mechanic, is entitled to patent invention evolved.

**4. Patents ⊜91(1)—Evidence held insufficient to overcome presumption that invention was conceived by employer, and not employee.**

In interference proceeding between employer, a trained scientist and bacteriologist, and mechanic, employed by him to make apparatus required for experiments, who was not a bacteriologist, involving invention of process and apparatus for destruction of bacteria, and the production of material for the making of vaccines, evidence *held* insufficient to overcome presumption that the invention was conceived by the employer, and not employee.

Appeal from Commissioner of Patents.

Interference proceeding between Winford P. Larson and David Crowther. From a decision of the Commissioner of Patents for the latter, the former appeals. Reversed.

A. C. Paul, of Minneapolis, Minn., and William G. Henderson, of Washington, D. C., for appellant.

F. A. Whiteley, of Minneapolis, Minn., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. Winford P. Larson, in March, 1918, applied to the Patent Office for a patent on a process and apparatus for the destruction of bacteria and the production of material for the making of vaccines. The applications were declared by the Patent Office on the 25th of June, 1918, to be in interference with applications to patent similar inventions filed by David Crowther in January and February, 1918. Upon the preliminary statement and evidence submitted by the parties to the interferences, the Examiner of Interferences rendered a decision on June 10, 1919, awarding priority of invention for the apparatus to David Crowther, the senior party.

On appeal that decision was reversed on the 23d of December, 1919, by Examiners in Chief Fairfax Bayard, Frank C. Skinner, and R. E. Marine, who held that Larson was entitled to patent both process and apparatus.

Crowther appealed to the Commissioner of Patents, and asked that the matter be remanded to the Examiner of Interferences, with instructions to reopen the case for the introduction of further evidence and for the determination of the rights of the parties to both process and apparatus.

After consolidating the process and apparatus interferences, and after a trial of the issues involved, the Examiner of Interferences on the 14th of May, 1921, again awarded priority of invention for process and apparatus to the senior party, David Crowther. That decision was affirmed by Examiners in Chief R. E. Marine, S. E. Fouts, and Sidney F. Smith on the 17th of October, 1922, and their decision was affirmed on appeal by the Commissioner of Patents. From the decisions of the Commissioner of Patents, Larson appealed to this court.

### The Facts as Contended for by Larson.

In 1913, 1914, and 1915, Dr. Thomas Bradford Hartzell, professor of mouth infections in the school of medicine and professor of oral surgery in the school of dentistry in the University of Minnesota, engaged in research work for the purpose of determining whether kidney, heart, and human joint inflammations were caused by pathogenic bacteria of the mouth and teeth. Dr. Hartzell endeavored to extract for his experiments the "juices" of living bacteria by means of heat, but found that that means produced a chemical change in the "juices" which rendered them unfit for his purposes, and that suitable material for his investigations must be derived from the bacteria by some other method. Not being well versed in bacteriology, he sought in 1916 the assistance of Dr. Winford B. Larson, who was an eminent bacteriologist. At that time Dr. Larson was professor of bacteriology and immunology in the University of Minnesota, and was then engaged in a series of experiments for the purpose of determining the efficiency of vaccines injected into ani-

mals and human beings for protective and for therapeutic purposes.

The valuable element of vaccines is the protoplasm which is contained in the cells of pathogenic bacteria, and which as the important component of vaccines excites the production of anti-bodies to battle with the particular form of disease carried by the protoplasm when introduced into the animal system. Dr. Larson's experiments proved that, when dead bacteria of vaccines were injected into the blood of an animal or human being, the phagocytes, or white blood corpuscles, immediately surrounded and devoured the bodies of the bacteria before the release of the protoplasm from the bacterial cells, thus minimizing or destroying the usefulness of the vaccines for the development of the active immunizing agencies known as anti-bodies. In other words, the white corpuscles did away with the bacteria so quickly that the protoplasm had no opportunity to act, and therefore failed to provoke the creation of the anti-bodies which conferred immunity.

Dr. Hartzell and Dr. Larson were therefore equally interested in securing the unmodified protoplasm of living bacteria, the one for the purpose of establishing that certain bacteria caused certain diseases, and the other for the purpose of producing a medium which would give immunity against the same or other diseases. Dr. Larson knew that bacteriologists had tried to make vaccines more effective by shaking the bacteria with glass beads, which treatment it was thought would break the cells and release the protoplasm. He was aware that that method of securing the protoplasm of live bacteria had been only moderately successful, inasmuch as it failed in large measure to break up the protoplasmic cells.

Dr. Larson thought that the bacteria could be more effectively disrupted by first freezing them and then grinding them in a ball grinder, which was purchased out of University funds in October, 1916. The freezing and grinding process did not succeed, and Dr. Hartzell requested the University to assign David Crowther to the duty of making equipment required by Dr. Larson and himself. At the request of Drs. Larson and Hartzell, Crowther made a small metal cylinder provided with a plate having a groove around its outer edge. Bacteria mixed with infusorial earth were placed in the cylinder and subjected to hydraulic pressure in a Buchner press. Dr. Larson was of the opinion that the pressure would reduce the bacteria from a corpuscular to a collodial or jelly-like form, which would escape immediate consumption by the phagocytes. The pressure of the Buchner press was not sufficient, however, to crush the bacteria, and the desired result was not achieved.

Crowther then bored a hole in a piece of common steel, and, after closing one end of the hole with a steel wedge, he ground a steel piston to fit the hole. Bacteria mixed with infusorial earth were placed in a lead cartridge, which was inverted and put into the steel cylinder. The lead cartridge so placed and resting on a lead disk which effected a perfect closure was then subjected by a powerful press to a pressure of 50,-000 pounds per square inch. That pressure forced the cylinder to give way, but did not kill the bacteria.

Prof. Hoyt, of the School of Mines, was then called into consultation, and he suggested that the cylinder be made of nickel chrome steel and he agreed, after the steel bar had been bored, to temper the metal so that it would resist a pressure of 225,000 pounds per square inch. The nickel chrome steel was bought on February 13, 1917, and at the request of Dr. Larson, Crowther bored it and fitted it with a piston in accordance with instructions from Dr. Larson. The device was then sent to Professor Hoyt to be tempered, and was returned to Dr. Larson on or about the 15th of February, 1917, fitted with a plunger or piston, and ready for use.

In the nickel chrome steel tube bacteria were subjected to a pressure of 100,000 pounds for 14 hours, with the result that the bacteria were killed and disrupted, but whether that effect was caused by the pressure or its sudden release remained to be determined. Dr. Larson thought that possibly the air in the bacteria had been greatly compressed, and that the release of the pressure brought about a sudden expansion of the air, which broke up the cells of the bacteria and accomplished their death. To put that theory to the test Dr. Larson decided to expose the bacteria to the pressure of carbon dioxide gas, which he knew was absorbed more readily than air by liquids. Mr. Crowther then made, according to Dr. Larson's instructions, a container with a suitable coupling which could be attached to a carbon dioxide tank in Dr. Larson's department, and in that container living bacteria suspended in distilled water were subjected to the pressure of carbon dioxide gas. The pressure was then suddenly released, with the result that the distilled wa-

ter containing the bacteria was violently driven out of the container, with the exception of a single drop, which, when examined, was found to contain dead and no living bacteria. After experimenting with several devices to prevent the escape of the bacterial mass into the carbon dioxide tank or onto the floor, Mr. Crowther was instructed by Dr. Larson to make another container with a second chamber, into which the bacteria could be driven on the release of the pressure and thereby preserved for examination and use.

With that apparatus all bacteria, except spores and yeast cells, were destroyed when exposed for 1½ to 2½ hours to the action of carbon dioxide having a pressure of about 1,000 pounds per square inch at room temperature. Any pressure below 600 pounds per square inch was not effective. Dr. Larson was not certain, however, as to whether the bacteria were destroyed by the acidity or by the sudden expansion of the gas. Accordingly he directed Crowther to prepare an apparatus which would test the effect of the acidity of carbon dioxide on the bacteria, and that apparatus was made by Crowther in accordance with Larson's instructions. By means of that apparatus it was found that the bacteria were not affected by the acidity of the gas.

In order to account for the apparatus requisitioned by Dr. Larson and for moneys expended, Crowther, at the request of Dr. Hartzell, made a report to him and to Dr. Larson of the several devices constructed by him. The carbon dioxide apparatus and a statement of the results accomplished by it were submitted by Dr. Larson to the Department of Pathology and Bacteriology at the seminar held in April or May, 1917.

During the autumn of 1917, Dr. Larson wrote an article describing his process of making vaccines and the apparatus designed to disrupt the cells of bacteria in order to secure the protoplasm necessary for the production of a successful vaccine. That article, which was received by the Journal of Infectious Diseases on the 30th of December, 1917, and published in March, 1918, pointed out that a pressure of 6,000 atmospheres were required to destroy nonspore-forming organisms, unless such organisms were impregnated with gas. A pressure of only 50 atmospheres accomplished the same result if the bacteria were impregnated with carbon dioxide and the pressure was suddenly released. According to Dr. Larson's article, carbon dioxide, because of its absorption in considerable quantities by liquids, was the ideal gas for killing bacteria and the breaking up of the cells thereof. Other gases, which were not as freely absorbed by liquids, required the application of a much higher pressure than 50 atmospheres to secure the effect produced by using carbon dioxide.

The ethics of the medical profession barred Dr. Larson from patenting the results of research work which would be of benefit to humanity, and he therefore did not apply for a patent. Indeed, he seems to have had no idea of applying for a patent until Crowther notified him, some time in 1918, that he had a "master patent" on the apparatus, and that, unless Larson obtained for him a larger salary from the University, he would exercise his patent rights and stop further experimentation by Larson with the apparatus. Larson replied that Crowther's demand was little short of blackmail, and immediately took the matter up with the president of the University and with Dean Vance of the Law School. In accordance with the advice given to him by Dean Vance, he protested to the Commissioner of Patents against the issuance of a patent to Crowther, and was informed by the Patent Office that his only recourse was to apply for a patent himself, in order that an interference might be declared. With the approval of the president of the University and Dean Owre, he applied for a patent, with the understanding that, should the patent be granted, it would be made free to the world, and that all business and patent rights acquired by him to process or device would be turned over to the National Dental Research Association, which had financed in a measure his investigations.

*The Facts as Contended for by Appellee.*

David Crowther was educated at the Hudersfield Technical School in England and was employed by the University of Minnesota in 1909 to design and make electrical equipment, electric vacuum furnaces, and special appliances for the department of chemistry of the University. In 1911 he was appointed instructor in dental mechanics and assigned to the College of Dentistry of the University, but continued to construct equipment, apparatus, and appliances required by the several departments of the University.

In 1907 Crowther was informed by divers on the docks of Liverpool that their lives would be endangered if they were drawn too quickly to the surface of the water. Crowther reasoned that "difference in ex-

pansion of the bodies that causes their destruction" made a sudden withdrawal dangerous to the divers and that the force which would destroy a diver would "in greater magnitude" prove destructive to other forms of life. By differences in expansion he meant that the body had been subjected to pressure by being withdrawn quickly; the volume increased rapidly and destroyed the life of the diver.

As a result of his conversation with the divers, Crowther in 1912 conceived the idea of destroying bacteria by pressure. When he first took up the idea, he proposed to saturate milk with compressed air or carbon dioxide, and by suddenly withdrawing the milk from the tank into a reservoir destroy the bacteria. Crowther testified that some bacteria are destroyed by the acidity of carbon dioxide, but utterly failed to explain how he knew that the bacteria of milk would be destroyed by the expansion of that gas rather than by its acidity.

Crowther's theory of destroying bacteria in food stuffs by the expansion of gases was discussed by him with Dr. Earle Hare, Dr. Charles A. Griffith, and Prof. Francis C. Frary; but, when such discussions took place, Crowther did not say. At one point in his testimony Crowther stated that in 1912 he had tried to construct an apparatus designed to carry out his theory, but subsequently acknowledged that he did not construct any such apparatus until 1916, and that prior to that year he had made only drawings or sketches of a *practical machine* for sterilizing milk. That machine, he says, consisted of a cylinder to contain the milk, a carbon dioxide tank to furnish gas, and a reservoir into which the milk could be withdrawn after exposure to the gas. None of those finished sketches or drawings were preserved, and so far as the record discloses they were shown to no one, except his son, William E. Crowther, who in 1912 was about 12 years of age. In his preliminary statement Crowther under oath declared that he conceived the apparatus for the destruction of bacteria and disclosed his invention to others on or about the 1st of June, 1917. That statement can hardly be reconciled with his testimony that he made drawings and sketches of a practical machine prior to 1916.

Crowther admitted that in the fall of 1916 he was requested by Drs. Larson and Hartzell to construct an apparatus which would squeeze out the "juices" of bacteria, and *that he constructed 11 or 12 devices to accomplish that purpose by direct pressure.* He twice endeavored to break up the organisms by grinding them, once between the sharp edges of a steel cylinder and a steel plate. None of these devices was designed to be used with carbon dioxide, and not one of them was a success. He then returned to his original idea of destroying the organisms by direct pressure, and, having constructed a cylinder of nickel chrome steel, he subjected the bacteria placed therein to a pressure of 100,000 pounds for 14 hours. That pressure, continued for that length of time, destroyed the bacteria. He then for the first time made a steel cylinder to contain the bacteria and provided a means for connecting it with a carbon dioxide tank. He says he decided to use carbon dioxide, as it was the most *suitable* means he could think of for saturating the liquid, and *had very little, if any, chemical action,* although he had previously testified that the acidity of that gas was sufficient to kill some bacteria, and made no experiments to determine what bacteria would be destroyed by such acidity.

While the chrome steel apparatus destroyed the bacteria, it wasted nearly all of the sought-for material when the pressure was suddenly withdrawn. Crowther then added to the apparatus a chamber into which, on the opening of a needle valve, the bacterial mass would be forced by pressure of the carbon dioxide and there preserved for use. Crowther was positive that he had conceived the necessity of such a chamber in 1912.

He testified that he reached his conclusion as to the efficiency of carbon dioxide by exposing para rubber to its pressure, and that he had a carbon dioxide tank in his room with which to make the experiment. On cross-examination he said he *thought* that he had made the rubber tests with a carbon dioxide tank and other apparatus in February or March, 1917. Later, on cross-examination, he stated that the tests were made, probably, about March or April, 1918.

After Dr. Griffith had testified that the experiments had taken place in March or April, 1917, Crowther was recalled for further cross-examination, and stated that he could not recall the dates of the experiments made by him on meat and rubber with carbon dioxide gas. In other words, he could not remember whether he made the experiments 9 months or 21 months before he gave his testimony. Why he tested the efficiency of carbon dioxide as late as 1917 and 1918,

when he claims to have been fully aware of its efficiency in 1912, is not explained.

On cross-examination Crowther also stated that the carbon dioxide device remained in his room during the whole time that it was in use, and that the University had furnished him with a carbon dioxide tank, a nitrogen tank, and an oxygen tank for experiments with the carbon dioxide machine. Subsequently he declared that Dr. Larson had the carbon dioxide apparatus in his department, where he used it to experiment on different kinds of organisms. When asked who brought the tanks to his room, Crowther evaded the question and answered that he had in his room *compressed air* with a pressure of 80 pounds. Disinterested witnesses on the part of the University testified positively that the University did not furnish any tanks containing carbon dioxide to Crowther, and that the only carbon dioxide tank sent to his room was an empty one. Crowther did not meet that challenge made to his claim that the University had delivered to his room a filled tank of carbon dioxide.

Crowther asserted that, with the exception of a perforated cylinder, no suggestion was made to him by either Dr. Larson or Dr. Hartzell as to any of the apparatus required by them, and that he was entirely free to construct any device which he thought would accomplish the result which they desired.

Crowther made a report to Dr. Hartzell of all apparatus constructed by him for Drs. Larson and Hartzell, and fixes the date of that report as October, 1917. In that report, referring to the making of the first dioxide machine and to the remedying of its defects, Crowther made use of the following language:

"I then suggested the idea that, if we could saturate the moisture contained in the germ with an *inert* gas and allow the gas to expand suddenly, an effectual bursting of the germ would be the result. * * * All the time we were getting good results, so far as destroying the germs, *but were not sure that it was purely physical, and not due to the chemical action of the C O₂ in solution.* We must have some better way of allowing the gas to expand and not losing the liquid. This problem was not so easy. However, I conceived the idea that it did not matter if the solution was allowed to be liberated slowly or all at once." (Italics ours.)

In the part of the report first quoted, the word "suggested" was substituted for the word "conceived," which was erased.

Dr. Hare testified that in the fall of 1912 Crowther talked with him about a method of destroying bacteria in milk by submitting it to carbon dioxide gas at a very high pressure, and that Crowther at the time made a little sketch illustrative of his idea. At that time, according to Hare, Crowther, *who was not a bacteriologist, went into the physics of the destruction of the organisms by saturation with carbon dioxide, and explained that the capsules or envelope of the bacteria would be penetrated by the gas under pressure,* which pressure, when suddenly released, would result in a rapid expansion of the gas that would break up the organisms, and was sure that the treating of milk with carbon dioxide under pressure would destroy all the organisms and preserve the milk indefinitely.

Dr. Hare knew of no effort on the part of Crowther to put his ideas into effect between 1912 and 1916. The first apparatus constructed by Crowther for the killing of bacteria was seen by Dr. Hare in November or December, 1916, after Crowther began to make equipment for Drs. Larson and Hartzell. That apparatus operated on the bacteria *by direct pressure* and did not use carbon dioxide. The machine seen by Dr. Hare was not made to kill bacteria in milk or food products, but was intended to solve quite a different problem—the killing of pathogenic bacteria. At the time Hare saw that apparatus he knew Crowther was working with Drs. Larson and Hartzell.

Dr. Griffith's testimony was to the effect that Crowther said to him in 1913: "Doc, how would it be to kill the bugs by hitting them on the head?" By that expression Crowther later explained that he meant the exertion of *high pressure,* which, when immediately released, would kill bacteria "by the expansion in the bodies." At this interview Crowther made no mention to Griffith of the use of carbon dioxide gas, or any other gas. In a subsequent conversation he told Dr. Griffith that he was going to sterilize milk, by placing it in a container and subjecting it to gas pressure, which pressure would be released by permitting the escaping of the gas into another container, thereby sterilizing the product. Griffith did not state when the last-mentioned interview took place, and for all that appears from his testimony it may have occurred after Crowther began to make equipment and apparatus for Dr. Larson. It should also be

noted that Crowther made no mention to Dr. Griffith of carbon dioxide as the gas which he intended to use. Dr. Griffith testified that in March or April, 1917, he saw in Crowther's room tanks of carbon dioxide and of oxygen and hydrogen, with which Crowther was experimenting on meat and rubber.

Dr. Francis Frary was not produced as a witness.

William E. Crowther, son of David Crowther, testified that in 1912 he saw designs for an apparatus for the sterilization of milk, which designs called for a tank to contain the milk, a tank to contain oxygen or compressed air, compressed to about 15,000 pounds, a large tank into which the milk would be forced after saturation, and pipes connecting the gas tank with the saturating tank, and the saturating tank with the large tank, in which the milk was to be forced and held until wanted.

A careful analysis of the foregoing evidence submitted by the parties to this appeal satisfies us that the original decision by the Board of Examiners in Chief was correct, and that the decision of the Commissioners of Patents cannot be sustained.

Because of his conversation with the divers, Crowther may have had and probably did have some idea of destroying bacteria in milk and food products by imposing a high pressure thereon and then suddenly releasing it, but that he ever conceived that the bacteria would be destroyed by impregnating milk or food products with gas under pressure and then suddenly releasing the pressure taxes our credulity.

Crowther was not a bacteriologist, and in 1912 had at best only a limited knowledge of chemistry. If he had known anything about bacteria, he would have known that their bodies, disintegrated by pressure, could not be left in milk or food products without rendering the disease-bearing protoplasm more effective, and that, instead of sterilizing foods, his process would make them more dangerous for human use.

The conversation with the divers in 1907 did not suggest that carbon dioxide could be used to destroy bacteria, and in our opinion that conversation gave rise to no conception in the mind of Crowther, other than that destruction of life would follow the sudden release of great *direct pressure*. In his direct examination he did not say that the death of divers too quickly withdrawn from the water was caused by the sudden expansion of air or gas, which ruptured the cells of their bodies. He attributed the death of the divers "to the differences in expansion of the bodies that causes their destruction." His theory was that "the body had been subjected to pressure by being withdrawn quickly; the volume increased rapidly and destroyed the life of the diver." He said nothing about exploding the cells, or the bursting of blood vessels or tissues by the sudden expansion of air or gas, and, if he had, the testimony is uncontradicted that the death of divers and caisson workers, suddenly relieved of pressure, is not caused in that way.

There was nothing in the education, training, or experience of Crowther in 1912 which gave him any information as to the make-up of bacteria or the effect of gases on them, and without study or examination he could not well have evolved the precise certain method of disrupting microscopical organisms which he claims to have conceived. For all that Crowther knew the cellular envelopes of bacteria were impervious to air or gas, and therefore he could not know or even reasonably assume that the cells would be impregnated with gas and broken up by suddenly releasing the gas pressure. Moreover, he claimed that he knew that carbon dioxide had an acid value which would destroy some bacteria, but what bacteria would be so affected he did not know. If that was the extent of his knowledge, he certainly could not know without experimentation whether the bacteria of milk would be destroyed by the chemical action of carbon dioxide or by the sudden physical expansion of the gas.

The fact that Dr. Larson, a trained scientist, thoroughly acquainted with the make-up of bacteria, sought to disrupt the bacteria by direct pressure and by grinding them, and did not reach a conclusion that they could be broken up by the sudden expansion of carbon dioxide gas until after a long series of experiments, renders it highly improbable that Crowther, who was not a bacteriologist, and who had no education or training as to the effect of gases on bacteria, conceived in 1912, without experimentation of any kind, that the cells of such organisms could be saturated with gas under pressure and the organisms disrupted by the sudden release of the pressure.

The improbability of such a conception by Crowther is further emphasized by the fact that, after his engagement to make apparatus for Larson, he, knowing since 1912, as he claims that bacteria could be destroyed

by gas pressure, made 11 or 12 devices to break them up by *direct* pressure and 2 machines to disrupt them by grinding. Crowther says he made all of these devices, as well as those for testing the acidity of carbon dioxide, without any suggestion whatever from Larson, and that he was perfectly free to make any appliance which he thought would disintegrate the organisms. And yet, knowing since 1912 that that result could be accomplished by using carbon dioxide, he never made any gas pressure apparatus until the spring of 1917, and never according to his own story suggested the making of one until after the testing of the chrome steel direct pressure machine. Strange to say, that was just the time when Larson says he conceived the idea that the bacteria killed in that machine might not have been destroyed by direct pressure, but by the sudden expansion of air compressed in the bacterial cells, and instructed Crowther to make the first carbon dioxide device for the purpose of putting his conjecture to the proof.

That Larson, the trained scientist and bacteriologist, arrived at his conception step by step, and after long, tedious, and expensive experiments, bears the indicia of probability and of truth. That Crowther, the skilled mechanic, with no knowledge of bacteria or of their absorption of gases, conceived, unaided and without experimentation, their destruction by suddenly releasing gas pressure imposed upon them, simply means the plucking of that conception out of the blue. That he did so we consider highly improbable, if not incredible.

[1] But, however that may be, Crowther was assigned to the duty of making apparatus required by Larson for his experiments, and that relation between the parties imposed upon Crowther, notwithstanding his status as senior party, the burden of proving by competent credible evidence that the conception definitely evolved by those experiments was his, and not that of his employer. Winslow v. Austin, 14 App. D. C. 137, 143, 144.

Apparatus and mechanical devices must be made for the purpose of experimentation, to determine the feasibility of abstract conceptions and the modifications thereof, if any, which should be made. Inventors who are not skilled mechanics must employ those who are to do that class of work. The mechanic must know what the inventor wants, and of necessity the latter must acquaint the former with the objective sought, and the inventor's conception of the method of reaching it.

[2, 3] The relation between mechanic and inventor is therefore one of high trust and confidence, and the inventor must be reasonably safeguarded against a betrayal of the faith reposed by him in his employee, and against a misuse of information confidentially acquired. Because of that relation it is prima facie, but strongly, presumed that the employer, not his mechanic, is entitled to patent the invention evolved. Consequently, in any dispute between them as to which of them originated a patentable conception, the duty devolves on the mechanic to establish by a clear preponderance of competent, credible, and satisfactory evidence that the invention was his and not that of his employer. Miller v. Kelley, 18 App. D. C. 163, 171; Braunstein v. Holmes, 30 App. D. C. 328.

[4] Crowther did not overcome the presumption against him, and the evidence submitted by him to the tribunals of the Patent Office was not of the kind which the law exacts. In his preliminary statement Crowther declared under oath that he conceived the carbon dioxide device on or about June 1, 1917, and that he first made drawings thereof on or about the 9th day of January, 1918. When he was called on, however, to give testimony in the interference proceedings, he stated that he had tried in 1912 to construct an apparatus designed to carry out his theory, and then admitted that prior to 1916 he had made no apparatus but only drawings and sketches of a *practical* machine. If he made drawings or sketches of a practical machine prior to 1916, he must have conceived the device before the 1st of June, 1917, the date of conception fixed in his preliminary statement which was filed four months before his testimony was given. That variance cannot well be accounted for, except upon the theory that it was caused by the belief that an earlier date of conception would strengthen his case.

None of the drawings or sketches of the practical machine was preserved. He showed them to no one, except to his own son, then 12 years old, and who at that tender age presumably knew little or nothing of drawings or of sketches. Although he frequently discussed his process conception and his device with Drs. Hare and Griffith, he showed to Dr. Hare a rough illustrative sketch only, and to neither of his confidants did he disclose the drawings or sketches of the practical machine. More than that, hav-

ing, as he says, conceived of a machine which consisted of a cylinder to contain milk, a carbon dioxide tank to furnish gas, and a reservoir into which the milk could be withdrawn after exposure to the gas, and claiming to know that such a machine would destroy bacteria, he says he constructed without suggestions from Larson 14 or 15 different devices to break up bacteria, by *direct pressure,* by *grinding,* and by forcing them through the pores of a cast iron cylinder. None of those devices was designed to be used with carbon dioxide.

Crowther testified that he tested the efficiency of carbon dioxide by exposing para rubber to its pressure, and that he had a carbon dioxide tank in his room to make the experiment. He first fixed the date of that test as February or March, 1917, and then changed that date to March or April, 1918, and finally, after Dr. Griffith had testified, wound up with the statement that he could not recall the date on which the test was made; that is to say, he could not remember whether he made the experiments 9 months or 21 months before he gave his testimony. That he had in his room a tank furnished by the University containing carbon dioxide was flatly contradicted by disinterested University employees, who asserted that no such tank was delivered. If Crowther knew the efficiency of carbon dioxide in 1912, and had made drawings of a practical machine for its use prior to 1916, it is hard to understand why it was necessary to test the gas for efficiency in 1917 or 1918.

Dr. Hare is discredited by his statement that Crowther, who was not a bacteriologist, went into the physics of the destruction of bacteria by saturation with carbonic dioxide, and explained that the capsules or envelopes of the bacteria could be penetrated by the gas under pressure, which pressure, when suddenly released, would destroy the organisms by rapid expansion. Crowther did not testify that he made any such statement to Hare, and apparently he could not have made it, inasmuch as he knew nothing of the composition of bacteria, and much less as to the penetrability of their capsules by gas, a fact, by the way, which did not become known to Dr. Larson, the trained bacteriologist, until developed by actual experimentation.

Moreover, if Crowther knew that the capsules of the bacteria would be penetrated by gas and bursted by the sudden expansion thereof, why did Dr. Hare recommend that Crowther consult Dr. Larson as the man to whom Crowther's problem should be submitted?

Dr. Griffith's testimony is discredited by his statement that he saw a tank containing carbonic dioxide in Crowther's room. No such tank was delivered to Crowther's room by the University authorities, and Crowther does not claim that he obtained a filled tank from any other source.

In view of the fact that Crowther was required by the University authorities to make equipment for Dr. Larson, and as the presumption of law raised against him by that relation was not overcome by a clear preponderance of credible and satisfactory evidence, we must hold that Dr. Larson was the first to conceive the process of destroying bacteria by pressure, and that he is entitled to a patent for both process and apparatus.

The decisions of the Commissioner of Patents are reversed.