## FRITZ v. HAWN.

Court of Customs and Patent Appeals.
February 6, 1930.

Rehearing Denied March 3, 1930.

Patent Appeal No. 2214.

Frank E. Liverance, Jr., of Grand Rapids, Mich., and John Boyle, Jr., of Washington, D. C., for appellant.

Chappell & Earl, of Kalamazoo, Mich. (F. L. Chappell, of Kalamazoo, Mich., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge. Philip Fritz, of Grand Rapids, Mich., presented his application to the Patent Office on May 18, 1925, for a patent on certain improvements in ice cream cabinets. On January 5, 1926, United States patent No. 1,568,216 was issued to him thereon.

On February 21, 1925, Harold A. Hawn filed his application, serial No. 10,778, for a similar invention. On March 6, 1926, an interference proceeding was instituted and declared between said patent and said application, and is one of the matters now involved here. The subject-matter of said interference is set forth in two counts, which are as follows:

"1. In a construction of the class described, a cabinet having sides and ends and an interior space adapted to receive ice cream holding containers, said space at the lower portion thereof being relatively narrow and of a width to receive a single ice cream container and of a length to receive a plurality thereof, and at its upper portion being widened whereby an elongated space is left between a side of the cabinet and containers for ice cream placed therein, and a plurality of refrigerant holding receptacles located end to end in said last mentioned space and adapted to be freely placed therein or removed therefrom.

"2. In a construction of the class described, a cabinet having sides and ends and an interior space, said space at its lower portion comprising a relatively narrow and elongated rectangular well and at its upper portion being widened, a plurality of ice cream containers of substantially cylindrical form located in said interior space of the cabinet with their lower portions received in said well and with their upper portions spaced from an inner side of the cabinet, and a plurality of refrigerant holding receptacles located between the said inner side of the cabinet, and the upper portions of said containers, each of said receptacles being freely removable from the cabinet independently of any other receptacle or of any ice cream container, and freely placed therein, substantially as described."

Thereafter, on the 16th day of March, 1927, the case having been submitted to the Examiner of Interferences, a decision awarding priority to Hawn was rendered, which decision thereafter, on March 23, 1929, was affirmed by the Board of Appeals.

On January 19, 1926, Hawn presented another application for improvements in ice cream cabinets to the Patent Office, and thereafter, on March 6, 1928, an interference proceeding was instituted and declared between his said application and the patent to Philip Fritz, heretofore mentioned, No. 1,568,216. The subject-matter of this interference consisted of one count, which is as follows:

"In a construction of the class described, a cabinet having sides and ends and an elongated interior space in which ice cream holding containers are adapted to be placed, said space at its lower portion being in the form of an elongated relatively narrow rectangular well and at its upper portion being widened at both sides of the well whereby elongated spaces are left between ice cream containers placed in alinement in the well and the inner sides of the cabinet, and a plurality of refrigerant holding receptacles located end to end in each of said last mentioned spaces at each side of end above the well and adapted to be freely placed therein or removed therefrom."

Afterwards, the case having been submitted, the Examiner of Interferences awarded priority to Hawn, which decision, on appeal to the Board of Appeals, was reversed on March 23, 1928, and priority was awarded by said Board to Fritz.

Both interferences are now before us on appeal by the respective parties. It has been stipulated that the same record shall be used in both cases, the cases have been heard together, and the points in issue in both will be, therefore, fully discussed herein.

It will be observed, from what has been said, that priority has been awarded to Hawn upon counts covering ice cream cabinets with refrigerant holding receptacles to be located on one side of the ice cream containers to be placed in said cabinet, while priority is awarded to Fritz on similar cabinets with refrigerant holding receptacles to be placed on both sides of the ice cream containers.

The main and only controversy here is a question of fact as to the origin of the idea which finally led to the invention in question. The facts, as they appear from the record, are substantially as follows:

Philip Fritz is a man 70 years of age, has been engaged in manufacturing since

1882, at Grand Rapids, Mich., and about 28 years before the hearing herein began the manufacture of refrigerators. This business has increased from year to year, and at the time of hearing amounted to perhaps half a million dollars a year. Fritz, during his business experience, has had active charge of the business of his factory, and has made several inventions. From the record it is obvious that all details of the business were submitted to him and had his personal supervision. In 1923, when mechanical refrigeration began, he and his son, who was then engaged in business with him, together with others of the company, sold and manufactured to some extent mechanical or iceless refrigerators. He stated that in December, 1922, he first began to experiment with an ice cream cabinet similar to that here involved, and at that time built a cabinet.

Up to that time ice cream containers had been manufactured with the refrigerating material placed in the chamber with the containers and immediately surrounding them. The effort of Fritz was to produce a form of cabinet where the refrigeration might be applied through receptacles in the side or sides of the cabinet, which receptacles might be removed and filled elsewhere than in the place of business.

In 1924 and 1925 the Fritz company made and sold a considerable number of ice cream cabinets with a removable refrigerating tray placed between two ice cream containers in the cabinet. These trays were originally full length, but later were shortened and placed on a rack. In January, 1925, the Fritz company began to sell cabinets constructed according to the design embodied in patent No. 1,568,216, here involved, and, in 1925, 2,800 of these cabinets were sold by the company.

During this experimental stage, the party Hawn was employed by the Fritz company, being employed originally to introduce a system of cost accounting and production efficiency in the plant. His employment continued from March 24, 1919, to October 12, 1925. He had had some experience as a draftsman, and was the only person in the Fritz establishment who had had training along this line. The party Philip Fritz on many occasions made rough sketches, several of which are in evidence, on work which he desired to have done in his factory, but made no pretense of being able to make a finished drawing. The evidence shows that Hawn, from time to time, made drawings for the company, as requested by Mr. Fritz.

There is a sharp conflict in the evidence as regards the making of the drawing which is known as Fritz Exhibit A, and from which it is agreed that the first test cabinet made by the Fritz company was constructed.

Philip Fritz and his son, Edward M. Fritz, testified that the elder Fritz had made a small, rough sketch of a cabinet to be constructed as the one here in issue, and called in Hawn and asked him to prepare a drawing, following the sketch, and at that time explained to him what the device was. Hawn testified, on his part, that he was called into conference with the elder Fritz and asked if he had any suggestions, and at that time he suggested the device in question; that after having done so, he went to his home and prepared the drawing, Exhibit A, and delivered it to Mr. Fritz on the next morning, December 4, 1924. Thereupon the necessary instructions were given by Mr. Fritz to the factory superintendent, Mr. Thomas, to prepare the necessary specifications, and to construct test cabinets. These were constructed, and, on January 10, 1925, the first cabinets were ready and offered for sale according to the new method of construction. The construction of these cabinets was admittedly made under the supervision of the elder Fritz.

The party Hawn, who was 30 years of age at the time of hearing, had been engaged, since leaving school, in work for various companies in ascertaining production costs and in purchasing. He had never had any experience with refrigerating devices, nor had he ever made any inventions of any kind. He testified that in November and December, 1924, and in January and February, 1925, he conceived the idea of using frozen ice and salt in removable trays, and that, during November, 1924, at his home, he drew the sketch which afterwards became Exhibit A, and which embodies the ideas of the device here in question. He further stated that he did not show this sketch to his employer, Fritz, at the time he first prepared it, but showed it only to one A. G. Woodman, who was at that time employed by the Fritz company. Afterwards, when requested by the elder Fritz to give suggestions, he procured the drawing from his home and showed it to him, having completed some details on the night before so offering it. Woodman testified that he saw this sketch at Hawn's home about the last of November, 1924.

As has been stated, Hawn filed his first application on February 21, 1925. He continued in the employ of Fritz until October

12, 1925. Before leaving this employment he organized a copartnership, to be known as the Consolidated Cabinet Corporation, and in this copartnership engaged Frank W. Thomas, superintendent, Mr. Thome, auditor and office manager, Mr. Schmeiser, foreman of the machine room, Mr. Woodman, shop superintendent, all employees, at that time, of the Fritz company, with the purpose of engaging in the manufacture of ice cream cabinets such as those involved here, and which, at that time, were being produced by the Fritz company. Hawn at no time protested against the using by the Fritz company of the device suggested by said Exhibit A, but does state that he brought it to the attention of the elder Fritz that he (Hawn) was the inventor of the device. The witness Frank W. Thomas, called by Hawn, testified that Mr. Fritz showed him a sketch of an ice cream cabinet, told him he was going to have Hawn make a drawing of it, and that the next day Hawn showed him Exhibit A, which he had prepared and which he then used to prepare further specifications for the cabinet.

As to the cabinet with refrigerating containers on one side only, Hawn testified that none were made by the Fritz company while he was in their employ, and that he made a drawing of such a cabinet shortly after he prepared Exhibit A; that he did not show this drawing to the Fritzes, and thereafter built a cabinet along these lines. It further appears from the evidence that Philip Fritz had, prior to November, 1924, manufactured ice cream cabinets with tapered sides of the opening for ice cream containers, with refrigeration means extending only part way down alongside of the ice cream containers, and as early as 1923 had made removable full length tapered trays for such cabinets. He also stated, with some corroboration, that he had built such removable trays, prior to that time, which were shorter than the ice cream containers with which they were used.

These interferences were decided by the Board of Appeals upon the theory that the junior party, in neither case, had sustained the burden cast upon him by law, and that, therefore, priority should be awarded in each case to the senior party. It is vigorously insisted that the Patent Office failed to take into account, in coming to such conclusion, the relationship of employer and employee existing between Fritz and Hawn, and that, under the law, because of such relationship, the burden of proof was upon Hawn; that, therefore, if it be true, as found by the Board, that neither party hereto sustained his burden of proof, award of priority should be made to Fritz. This contention we shall briefly examine.

We are of opinion that the Board of Appeals did not give sufficient consideration to this phase of the subject. It is argued that Hawn was not employed to help design cabinets. Nevertheless the nature of his duties were such as to bring him in contact with the details of such work. He was obliged to compute, for his employer, the cost and efficiency of each detail of construction. He was called upon to make estimates and drawings for such construction and perform these functions constantly. We therefore hold that the relationship of employer and employee did exist between Fritz and Hawn in this work.

Under such circumstances, the law is well settled. It was expressed by Smith, J., in Larson v. Crowther, 55 App. D. C. 58, 1 F.(2d) 761, 767:

"But, however that may be, Crowther was assigned to the duty of making apparatus required by Larson for his experiments, and that relation between the parties imposed upon Crowther, notwithstanding his status as senior party, the burden of proving by competent credible evidence that the conception definitely evolved by those experiments was his, and not that of his employer. Winslow v. Austin, 14 App. D. C. 137, 143, 144."

To the same effect are Sendelbach v. Gillette, 22 App. D. C. 168; Gallagher v. Hastings, 21 App. D. C. 88; Laughlin v. Burry, 50 App. D. C. 273, 270 F. 1013; Miller v. Kelley, 18 App. D. C. 163.

Perhaps the most illuminating discussion of the principles of law involved in such cases may be found in the opinion rendered by Mr. Justice Clifford in Agawam Woolen Co. v. Jordan, 7 Wall. 583, 602, 19 L. Ed. 177. At the risk of perhaps unduly extending this opinion, we quote it here:

"No one is entitled to a patent for that which he did not invent unless he can show a legal title to the same from the inventor or by operation of law; but where a person has discovered an improved principle in a machine, manufacture, or composition of matter, and employs other persons to assist him in carrying out that principle, and they, in the course of experiments arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general to be regarded as the

property of the party who discovered the original improved principle, and may be embodied in his patent as a part of his invention.

"Suggestions from another, made during the progress of such experiments, in order that they may be sufficient to defeat a patent subsequently issued, must have embraced the plan of the improvement, and must have furnished such information to the person to whom the communication was made that it would have enabled an ordinary mechanic, without the exercise of any ingenuity and special skill on his part, to construct and put the improvement in successful operation.

"Persons employed, as much as employers, are entitled to their own independent inventions, but where the employer has conceived the plan of an invention and is engaged in experiments to perfect it, no suggestions from an employee, not amounting to a new method or arrangement, which in itself is a complete invention, is sufficient to deprive the employer of the exclusive property in the perfected improvement. But where the suggestions go to make up a complete and perfect machine, embracing the substance of all that is embodied in the patent subsequently issued to the party to whom the suggestions were made, the patent is invalid, because the real invention or discovery belonged to another."

Guided by the principles thus announced, we have no hesitation in concluding priority in both these interferences should have been awarded to the party Fritz. It is quite evident, from the evidence which we have herein set out at some length, that, even taking Hawn's testimony at its face value, all he did was to make suggestions to Fritz ancillary to the plan and design which Fritz had conceived and was then engaged in working out, and for which he had in his mind at that time the basic ideas. For years Fritz had lived with the ice cream cabinet business; he had constantly made improvements and many inventions, building his business up until he outstripped his competitors. Every idea employed in the later cabinets, whether they had refrigerating trays on one or both sides, whether the trays were long or short, had been conceived and utilized, in some degree, by him. On the other hand, Hawn was not an inventor. If he did conceive, without outside suggestion, the invention here in question, it would be remarkable. On the other hand, the more reasonable conclusion is that, from his contact with Fritz and Fritz's business, and from the suggestions thus received, he evolved the idea which he thought was his own conception, but which was, in fact, the creature of his employer's brain. In order to succeed here, it must be apparent, from the record, that he was the inventor of the device in question—that the basic conception was his. This, we believe, he has not shown.

This being our conclusion, the decision of the Board of Appeals should be affirmed as to interference No. 53,491, and reversed as to interference No. 53,490, and priority should be awarded in said last-numbered interference to Philip Fritz.

The decision of the Board of Appeals is therefore, in this appeal, reversed, and priority is awarded to the party Philip Fritz.

Reversed.