## SCHWEYER v. THOMAS.
### Patent Appeal No. 3176.

Court of Customs and Patent Appeals.
Feb. 26, 1934.

Church & Church, of Washington, D. C. (Melville Church and C. B. Des Jardins, both of Washington, D. C., of counsel), for appellant.

Synnestvedt & Lechner, of Philadelphia, Pa. (Edward H. Davis, of Philadelphia, Pa., Wm. M. Cady, of Pittsburgh, Pa., and Paul Synnestvedt, of Philadelphia, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office in an interference proceeding, No. 56,739, wherein said Board affirmed decisions of the Examiner of Interferences awarding priority of invention to appellee upon all the counts in issue.

It appears from the record that said interference No. 56,739 is a consolidation of two prior interferences in the Patent Office, to wit, interference No. 56,739, comprising seventeen counts, numbered 1 to 17, inclusive, and interference No. 53,166, comprising eight counts. By order of the Board of Appeals, the interferences were consolidated, the eight counts of interference No. 53,166 being added to the seventeen counts in interference No. 56,739, and numbered from 18 to 25, inclusive.

Counts 1, 8, 18, and 25 are illustrative of the counts in issue and read as follows:

"1. In an automatic train control apparatus, the combination with a brake pipe, of means for automatically effecting a reduction in brake pipe pressure in two stages, a valve device having positions for cutting said means into and out of action, and means operating upon a change in the signal indication for controlling the operation of said valve device."

"8. In an automatic pneumatic brake apparatus, a brake pipe, a reservoir, a differential valve device subject to opposing pressures from said brake pipe and reservoir and operable to permit escape of fluid from the brake pipe when the brake pipe pressure is greater than the reservoir pressure, a plurality of expansion chambers, and automatic means for connecting said reservoir with the expansion chambers in succession to obtain periodic successive reductions in reservoir pressure."

"18. In a fluid pressure brake, the combination with a brake pipe, of means for effecting a predetermined reduction in brake pipe pressure and means operated automatically upon completion of said predetermined

reduction in brake pipe pressure for effecting a second reduction in brake pipe pressure."

"25. In a fluid pressure brake, the combination with a brake pipe, of an equalizing reservoir, a valve mechanism subject to the opposing pressures of the brake pipe and the equalizing reservoir for controlling the venting of fluid from the brake pipe, a reduction reservoir, a train speed controlled application valve device operative to connect said reduction reservoir with the equalizing reservoir, a second reduction reservoir, valve means operative to connect said second reduction reservoir with the equalizing reservoir and means for delaying the operation of said valve means."

The interference arises between an application of appellant, No. 698,533, filed March 11, 1924, and a patent to appellee, No. 1,533,-481, issued April 14, 1925, upon an application filed April 9, 1923, and also an application, No. 149,548, filed November 19, 1926, by appellee, for a reissue of his said patent No. 1,533,481, with certain claims added thereto.

The appellant is therefore the junior party.

The Examiner of Interferences awarded priority of invention in each of said interferences to appellee, and, as above stated, the Board affirmed said decisions of the Examiner and awarded priority of invention to appellee.

The invention is described in the decision of the Board of Appeals as follows:

"The subject matter of the issue is means to control the application of brakes of railway trains to secure a result known as split reduction in the application of the brakes. In the case of long trains and particularly at low speeds it is necessary to apply the air brakes cautiously since in the usual system where a train pipe is vented at the locomotive the brakes at the forward end of the train tend to act first or before those toward the rear. This causes the rear cars to overtake and bump against the forward cars as the slack in the draw bar system is taken up. Also if suddenly applied with too much force the brakes might lock the wheels of some or all of the cars. The engineer therefore applies the brakes by a succession of small increments allowing sufficient time between, for all of the brakes to come to approximate equalization before the next increment of their pressure. In automatic train control devices it is necessary to embody means to automatically simulate this action by the engineer and both applicants

have disclosed an attachment said to be for use in automatic systems. Schweyer shows it so combined. Thomas shows it separately but states that it is intended for use in such automatic train speed control equipment."

It will be observed that the invention here involved is closely related to the invention involved in patent appeal 3190, decided concurrently herewith. 68 F.(2d) 957, 21 C. P. A. ——.

Appellant in his preliminary statements alleged conception of the invention and disclosure to others in the spring of 1920, but did not claim reduction to practice of the invention prior to his filing date.

Appellee in his preliminary statements alleged conception of the invention in May, 1922, disclosure to others in June, 1922, and reduction to practice in October, 1922. Appellee, however, took no testimony to establish the dates alleged in his preliminary statements, but stood upon the filing date of his original application, April 9, 1923, for conception and reduction to practice of the invention.

In interference No. 53,166, appellee took no testimony, and in the original interference, No. 56,739, he took the testimony of only one witness as an expert with respect to certain features of appellant's device. Appellant took testimony in both interferences.

Both of the tribunals of the Patent Office found that appellant conceived the invention in 1922, but that appellant was lacking in diligence in reducing the invention to practice at the time that appellee entered the field, to wit, his original filing date, April 9, 1923. Appellee does not challenge the finding of the Board that appellant was the first to conceive the invention.

Appellant contended before the Patent Office tribunals, and contends here, that as to counts 1 to 17, inclusive, appellee could not rely upon his original application for constructive reduction to practice upon the ground that the device there disclosed was inoperative. The Board of Appeals held that, inasmuch as appellee's new application was identical, so far as disclosure is concerned, with appellee's original application upon which said patent No. 1,533,481 was issued, and appellant had made no motion to dissolve the instant interference in respect to counts 1 to 17, inclusive, upon the ground of inoperativeness of the device disclosed in said reissue application, appellant could not be permitted to raise the question of inoperative-

ness of appellee's device shown in his original application.

We will first dispose of this latter contention made by appellant. Clearly the Board was right in its ruling; by failing to move to dissolve the interference as to said counts 1 to 17, inclusive, appellant admitted for the purposes of this case that appellee's device was operative, and as identically the same device is shown in the original application, it must likewise be held to be operative.

The question of inoperativeness of a device of one of the parties may not be raised in an interference proceeding in the absence of a motion to dissolve the interference for that reason. Isom v. Dubbs, 58 App. D. C. 25, 24 F.(2d) 467.

In the case of Dreyfus v. Lilienfeld, 49 F.(2d) 1062, 18 C. C. P. A. 1539, we held that, where a party had failed to move to dissolve an interference upon the ground that the disclosure in the application of one of the parties failed to support the count, the question of whether a prior application containing the same disclosure supported the count could not be raised.

For the reasons stated, we will not consider the question of inoperativeness of the device disclosed by appellee, either in his original or reissue application.

There remains the question of diligence of appellant in reducing the invention to practice. As hereinbefore indicated, appellant is the junior party. As he was the first to conceive the invention but the last to reduce it to practice, the burden was upon him to establish by a preponderance of evidence that he was diligent in reducing the invention to practice from immediately prior to April 9, 1923, appellee's filing date of his original application, to March 11, 1924, which is appellant's filing date, when the invention was constructively reduced to practice by him.

The testimony on behalf of appellant is voluminous, and we will not review it at length. It appears that on July 3, 1923, appellant instructed his attorney to file an application for a patent for the invention here involved, sending him plans and specifications disclosing the said invention. Said application, as hereinbefore stated, was not filed until March 11, 1924, and appellee claimed before the Patent Office tribunals that the delay in filing the application after appellant's attorney had been instructed to proceed with the application constituted lack of diligence. Both of the Patent Office tribunals concurred in finding that there was no lack of diligence of appellant between said dates of July 3, 1923, and March 11, 1924, but both tribunals concurred in finding that there was lack of diligence by appellant in reducing the invention to practice between immediately prior to April 9, 1923, when appellee entered the field, and July 3, 1923, when appellant instructed his attorney to prepare an application for a patent for the invention.

It is obvious that, if we concur in the finding of the Board of Appeals with respect to lack of diligence by appellant between immediately prior to April 9, 1923, and July 3, 1923, it will be unnecessary for us to consider in this appeal the question of appellant's diligence between July 3, 1923, and March 11, 1924, and the decision of the Board of Appeals must be affirmed.

It appears from the testimony that appellant, for a number of years prior to April 9, 1923, had been engaged in designing new train control systems and devices, and in 1917 had conducted actual tests of a system designed by him which was experimentally installed on a locomotive and section of track of the Reading Railroad. In 1920 another test was conducted in the Lehigh Valley shops. It appears that, prior to appellant's conception of the invention here in issue, three patents had been issued to him covering automatic train control systems or parts thereof. Appellant testified that he had been experimenting with train control and air brake mechanisms since 1913. It is appellant's contention that, in order to reduce the invention to practice, it was necessary to secure a locomotive and train of cars to test the device embodying it; that throughout the entire period here in question he exercised diligence in attempting to secure such locomotive and cars from different railroad companies, but was unable to do so, and therefore he contends that he is not chargeable with lack of diligence.

The Examiner of Interferences held that appellant's activities in negotiating with railroad companies was with the view of commercial exploitation of the device for which he had patents or applications for patents pending, not including the application here involved, rather than with the view of reducing the invention here involved to practice.

The Board of Appeals in its decision, with respect to appellant's diligence from April 9, 1923, to July 3, 1923, stated as follows:

"* * * During this time we find Schweyer not working on the apparatus or an application for a patent but merely sending out some letters to railroads soliciting an order for an installation of the Schweyer apparatus, not necessarily embodying the feature of this issue, and as noted above we find no reference in any of the correspondence or circulars sent to the several railroads, about the essential feature of this issue. We are unable to agree that Schweyer was diligent over the period from April 9, 1923 to July 5, 1923. We believe this is further emphasized by the fact that this split reduction attachment is not mutually dependent with the rest of the system set forth in the application although sufficiently operative therewith to enable it to stand with the system in the application. It is an attachment that could be used with air brake systems in general and could stand in a separate application."

We are in accord with the above-quoted views of the Board of Appeals. We have examined all of the correspondence found in the record between appellant and others respecting the installation and demonstration of his automatic train control system upon locomotives in connection with the necessary cars, and, while appellant in some of the correspondence gives detailed information with respect to features covered by his patents and pending applications for patents, not until a letter dated June 29, 1923, do we find in such correspondence any reference to the invention here involved, which time was nearly three months after appellee entered the field. That reference is in a letter to the Erie Railroad Company, and reads as follows:

"We are making certain improvements on the pneumatic end and are in a position to give you the airbrake mechanism as you desire. Namely, making an application of five pounds, wait for an interval of five seconds and then make another application of twenty or twenty five pounds."

Efforts toward commercial exploitation of an invention not yet reduced to practice do not constitute diligence. Petersen v. Thomas, 56 App. D. C. 113, 10 F.(2d) 908.

In the case at bar it does not appear from any of the correspondence that, prior to June 29, 1923, appellant attempted either to exploit the particular invention here involved or reduce it to practice, but it does appear that he was attempting to secure a demonstration and tests of other inventions which he had made.

Whether, if he had secured such demonstration, he would have installed and tested the particular invention here involved, depends wholly upon appellant's uncorroborated testimony.

The burden of proof was upon appellant to establish, by a preponderance of evidence, diligence in reducing the invention to practice from immediately prior to April 9, 1923, to March 11, 1924. This burden we do not think has been sustained by him, and we find no error in the decision of the Board of Appeals that appellant was lacking in diligence in reducing the invention to practice.

We may assume that an actual reduction to practice of the invention required the installation of a device embodying it in a locomotive in connection with a train of cars, and it may be accepted as a fact that appellant could not at any reasonable expense have secured such locomotive and cars for that purpose if he had attempted to do so, but in such case diligence required that appellant seasonably make an application for a patent and thus secure a constructive reduction to practice.

In the case of Seeberger v. Dodge, 24 App. D. C. 476, a somewhat similar situation existed as in the case at bar. In that case the court said:

"Granting the contention that actual reduction to practice is preferable to that which is constructive, merely, as more to the interest of the public, and that reasonable indulgence ought to be extended to one pursuing that course in good faith, yet, when the construction of an experimental device involves so great cost and risk that an inventor, though possessed of sufficient means, may well hesitate to undertake the same entirely at his own expense, due diligence requires that he should then attempt to secure his right and promote the public interest by filing an application for a patent. * * *"

So here, it would have been a simple matter for the appellant to have filed an application for a patent for the invention in issue prior to the time that appellee entered the field, or to be diligently engaged in the preparation of such an application before said date.

It appears from the correspondence in the record that, at least as early as May, 1922, and continuing thereafter, appellant attempted to secure demonstrations for the purpose of commercial exploitation of his automatic train control system, not, so far as it ap-

pears, including the invention here in issue, but was not successful.

Under these circumstances, we think that in the exercise of diligence appellant was required to file an application for a patent for the invention here involved or to be diligent in the preparation of such application before appellee entered the field and constructively reduced the invention to practice.

We concur in the finding of the Board that appellant was lacking in diligence in reducing the invention to practice at the time appellee entered the field and for a considerable time thereafter.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.