**BORGLIN v. PALMER.**
**Patent Appeal No. 3285.**

Court of Customs and Patent Appeals.
May 31, 1934.

Busser & Harding, of Philadelphia, Pa. (Frank S. Busser and George J. Harding, both of Philadelphia, Pa., of counsel), for appellant.

Charles W. Hills, Jr. (Benj. H. Sherman, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The present appeal is from the decision of the Board of Appeals of the United States Patent Office in a patent interference proceeding, which decision affirmed the decision of the Examiner of Interferences in awarding priority to the party Palmer. The interference is between the application of the party Borglin, serial No. 269,600, filed April 12, 1928, and the patent of the party Palmer, No. 1,787,281, issued December 30, 1930, on his application, serial No. 289,079, filed June 28, 1928. The patent to Palmer was inadvertently issued.

The interference has four counts; the subject-matter thereof being a new article of manufacture, namely, "a solid rosin product substantially free of crystalline abietic acid and containing a relatively small quantity of an alkali metal abietate," and a process for making the same. The subject-matter of the counts is not important; it being admitted that both parties have disclosed said subject-matter by their applications.

In the interference proceeding, the party Palmer took testimony, filed a brief, and was represented by counsel in the final hearing. The party Borglin filed a brief and was represented by counsel at the final hearing, but offered no testimony to establish a date of his invention prior to his filing date. He was therefore restricted by both tribunals in the Patent Office to his filing date, April 12, 1928, as the effective date of his conception and reduction to practice.

There is but one question involved in the controversy here, namely, Did the party Palmer show conception and reduction to practice of the invention, the subject-matter of the counts, prior to Borglin's filing date? The subject-matter of this controversy is also stated, in substance, by the counsel for appellee: Was the party Palmer in possession of the subject-matter of the counts, fully conceived and reduced to practice, before said filing date of the party Borglin? It is argued, in this connection, that it is immaterial whether or not Palmer, personally, conceived and reduced the invention to practice, if he was in possession thereof, the same having been fully reduced to practice prior to Borglin's effective date.

It is also contended by the appellee that, inasmuch as it is admitted by the appellant that the invention, the subject-matter of the counts, was in esse prior to Borglin's filing date, Borglin cannot be entitled to an award of priority, and that therefore the question now presented requires no discussion. This

may be true. However, inasmuch as the parties have presented the case fully upon its merits, in view of our conclusion, it is thought advisable by the court that it be decided thereon.

The party Palmer claims that he conceived the invention in issue on or about July 27, 1926. Palmer was then chief chemist and director of research and development work for Newport Industries, Inc., at Pensacola, Fla. For several years his company had been manufacturing rosin, which had been treated with a small percentage of lime, with a view to raising its melting point and retarding crystallization, for various uses. Complaints had been received by his company, because of the presence of crystalline abietic acid in the rosin. On or about the date mentioned, he testified that he conceived the idea that, if he introduced into the rosin sufficient sodium soap, he could prevent the presence of crystalline abietic acid. Immediately upon having conceived this idea, he directed John L. Burda, who was a chemist working under Palmer's direction in the company's laboratory, to prepare a small batch of rosin containing "about as much sodium resinate as we had formerly been manufacturing as calcium resinate and to so conduct the experiment as to imitate as closely as possible the conditions under which we would have to add sodium hydroxide, for example, to rosin provided that addition was made when the rosin was first put into our B stills."

The principal controversy between the parties here is whether Palmer specifically directed Burda about this process, or whether Burda conceived the process himself. Leaving out of account, for the present, the materiality of a discussion of this question, we have considered the matter with a view to determination of this point. The tribunals in the Patent Office were agreed that Palmer had shown a conception and reduction to practice during these experiments, which were conducted by Burda under Palmer's direction. Counsel for appellant vigorously attack this finding, contending that Palmer not only did not sustain the burden placed upon him as junior party by proving conception and reduction to practice at this time, but insist further that his entire proof of reduction to practice and conception consists of his own testimony, which counsel insist has been contradicted in its essential features by the testimony of the witness Burda.

■ We have examined the testimony on this point, in view of these contentions of the appellant, with much care. From such examination we are satisfied that Palmer directed the witness Burda as to the general conduct of these experiments, and that, what Burda did, he did under the direction, with the concurrence and help, and with the full knowledge, of Palmer, who was in responsible charge of these experiments. Burda so states in his testimony. Although there is some showing in Burda's cross-examination that a part, at least, of the conception may have originated in his mind, it is apparent that he was of opinion, at the time he testified, that the experiments were conducted in conformity with Palmer's directions, and that Burda himself was not claiming to be the one responsible for their conduct or methods. Palmer was fully cognizant of whatever was done at the time. Burda was performing his services while in the employ of Palmer, at Palmer's directions, and, under any reasonable interpretation of the rule so often announced by this court, the presumption is that benefit of his work inured to Palmer. Braunstein v. Holmes, 30 App. D. C. 328; Fritz v. Hawn, 37 F.(2d) 430, 17 C. C. P. A. 796; De Forest v. Owens, 49 F.(2d) 826, 18 C. C. P. A. 1424; Owens v. Sponable, 69 F. (2d) 650, 21 C. C. P. A. ——.

The rosin which was the result of these experiments, known as batch No. 1057, was sold and otherwise disposed of, as is shown by the testimony of other responsible and reliable witnesses and written records, long prior to Borglin's filing date. In addition to this, it is shown by the testimony of the witness Romaine that, about the middle of October, 1926, Palmer fully detailed to Romaine the facts relative to the manufacture of batch No. 1057 and the details of the invention, and was in full possession, not only of the invention, but of all the details of the manufacture of the product, and of its uses and properties.

■ These facts are amply sufficient to justify the tribunals of the Patent Office in their conclusions as to Palmer having conceived and reduced the invention to practice before Borglin's date of conception.

■ Counsel for appellant do not seriously contend that it aids the case of the appellant to claim that Burda, and not Palmer, was the real inventor. It is well settled by the authorities that such a claim will not aid a party in an interference proceeding. The issue is one of priority as between the parties to the interference, and the rights of parties who are not in the interference are not involved or material. Foster v. Antisdel, 14

App. D. C. 552; Prindle v. Brown, 24 App. D. C. 114; Luellen v. Claussen, 43 App. D. C. 444; Beidler v. Caps, 36 F.(2d) 122, 17 C. C. P. A. 703; Cooper v. Hubbell, 53 F. (2d) 1072, 19 C. C. P. A. 790; Derby v. Whitworth, 62 F.(2d) 368, 20 C. C. P. A. 791.

It is plainly shown by this record that the party Palmer was in possession of this invention, fully conceived and fully reduced to practice, before the party Borglin entered the field by filing his application. Palmer, having shown that he was in full possession of the subject-matter of the invention prior to Borglin's filing date, has established a prima facie case, which must prevail, unless overcome by other evidence or by facts and circumstances as shown by the record. Foster v. Antisdel, supra.

The decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.