36 C.C.P.A. (Patents)

## KENDALL v. SEARLES.

### Patent Appeal No. 5554.

United States Court of Customs and Patent Appeals.

April 12, 1949.

Wooster & Davis, of Bridgeport, Conn., (Lee L. Townshend, of Washington, D. C., and Max W. Davis, of Bridgeport, Conn., of counsel), for appellant.

Mitchell & Bechert, of New York City (Fred J. Bechert, of New York City, of counsel), for appellee.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined by the two counts in issue, Nos. 1 and 2, to appellee, Raymond R. Searles.

The interference involves a patent of appellant, No. 2,349,281, granted May 23, 1944, on an application, No. 429,877, filed February 7, 1942, as a continuation-in-part of applications, No. 357,107, filed September 17, 1940, and No. 408,276, filed August 25, 1941, and an application of appellee, No. 495,583 filed July 21, 1943, as a continuation-in-part of application, No. 349,836, filed August 2, 1940.

Count 1 is sufficiently illustrative of the counts in issue. It reads:

"1. A device of the character described comprising a bimaterial unitary substantially integral rotatable structure including a circular body member in the form of a pulley or similar article and formed on its periphery to cooperate with a driving means running thereon, a single one piece preformed continuous hardened metal anti-friction bearing raceway ring mounted in said body concentric with said periphery forming a track for the rolling elements and of sufficient thickness to carry the normal rolling load, said body member being of different material than the ring but of a degree of hardness to withstand the load without materially changing its repose dimensions, and said ring having an outer surface permanently bonded to the material of the body to mount and hold the ring permanently in a given position in said body whereby the track surface may be finished with respect to the pitch line of said working periphery after mounting of the ring in the body and bonding it thereto so that the track surface may be brought into exact axial and concentric alignment with the pitch line of the working periphery of the body member."

The invention in issue relates to a number of different rotating constructions, one of which includes a pulley. The body of the pulley is molded around an outer ring of an anti-friction bearing ring so that the raceway of the outer bearing ring may be ground concentric with the periphery of the pulley, after the outer bearing ring has been permanently embedded in place in the pulley.

The counts, with slight changes, were copied by appellee from appellant's patent, and are substantial duplicates of claims 1 and 2 of the patent. It is deemed necessary to a clear understanding of the nature of

the invention and a discussion of the issues make reference to the following drawings to set out at this point and hereinafter of each of the parties:

## Appellant's Drawing

Fig.1.

Fig. 2.

Fig. 3.

Fig. 4.

Fig. 5.

Fig. 6.

Appellee's Drawing

A number of motions were made and decided by the Primary Examiner during the motion period. However, the only motion urged before the Board of Interference Examiners was appellant's motion to dissolve the interference on the ground that appellee's disclosure was not sufficient to support the counts.

Both parties took testimony, filed briefs, and were represented at the final hearing. There appellant again contended that appellee's disclosure was insufficient to support the counts and particularly that there was no disclosure by appellee (1) that the bearing ring is permanently bonded to the material of the body forming the pulley, and (2) that the working surface of the pulley, on which the working element runs, and the raceway are so finished with relation to each other that they are accurately concentric and in axial alignment.

The board found no manifest error in the decision of the Primary Examiner relative to the disclosure of the respective parties. It held that the disclosure of appellee was sufficient to support the counts and awarded to appellee priority of invention of the subject matter of the counts. In rendering that decision, the board held that appellee had the burden of proving priority of invention by a preponderance of the evidence; that appellant had established conception of the invention in issue as early as 1935; that appellant had failed to allege or establish reduction to practice prior to his original filing date, September 17, 1940, and had also failed to show diligence during the critical period from "at least between 1939 and September 17, 1940."

Appellant contends here, as he did before the tribunals of the Patent Office, that important limitations of structure and arrangement defined by the counts are not disclosed in appellee's application, and that his application relates "merely broadly to molding a bearing ring in a body of plastic moldable material, such as Bakelite, and then after the material has hardened, grinding the raceway to eliminate or cure out-of-roundness resulting from the effect of possible distoration [sic] of this ring caused by pressure from the contraction of the molding material."

The counts include mechanical or functional limitations inherent in the disclosure of each of the parties. Both parties disclose unfinished pulleys having a pulley body of plastic material cast, molded or bonded to the outer ring of a ball bearing. Appellant referring to that construction, as illustrated in his drawings, points out in his specification that—

"With this construction the bearing may be gripped and held by the surfaces 24 on the opposite sides of the track or raceway ring during the final finishing and grinding of the peripheral or driving surfaces of the pulley, sprocket or similar device and the track or raceway surface 15. Therefore these surfaces can be readily finished and located in exact radial and axial concentric alignment with each other, as they may be finished in the same single chucking operation. The peripheral working portion is therefore located in exact radial and axial concentric alignment with the track or raceway and vice versa.

"Therefore in each instance or example shown the belt pitch line, the sprocket pitch line 38, and the pitch lines 39, 40 of the gears at the periphery can readily be properly and exactly positioned with reference to the raceway surface for the rolling elements, which is very difficult if not practically impossible with the old constructions. This is extremely important for smooth and efficient running or operation, especially at high speeds."

Appellee stated in his specification that when in the old constructions of the prior art the outer bearing ring was mounted in a plastic housing, the outer ring was quite often distorted. That distortion he described as "out-of-roundness" of the outer bearing ring which caused rapid deterioration of the bearing. Referring to his drawings, appellee further stated in his specification that—

" * * * I eliminate out-of-roundness by casting the outer ring in its plastic housing without any effort to maintain perfect roundness of the outer bearing ring, and after the shrinkage and other strains have been put on the outer bearing ring I grind or finish grind the raceway surface 7, which may be a ball raceway or the race-

way for a roller bearing. In the form illustrated more or less diagramatically in Fig. 3, I may employ a grinding wheel 8 in an oscillating type of grinder so that the arcuate raceway 7 will be ground while the bearing ring and its housing are being rotated about the axis of the bearing ring. * * * "

The board in reaching its conclusion, that appellee's disclosure was sufficient to support the counts in issue, relied upon the following statements, quoted from the decision of the Primary Examiner, as correctly applicable to the disclosure of both parties:

"In both Searles and Kendall it is disclosed that the body member is cast on the race ring hence if the body member is permanently bonded to the race ring in Kendall it must necessarily follow that it is permanently bonded in the Searles device. The limitations after the word "whereby" in the above quotation relate solely to function. Inasmuch as the structural limitations of the counts are common to both Searles and Kendall any functional limitations which may properly be claimed must likewise be common and inherent in both structures."

The board noted that appellee made no statement in his specification about accurate concentric and axial alignment of the pulley work surface and the bearing raceway. The board further noted, however, that it appeared from appellee's drawings that such alignment was present, and that "Accuracy within the exigencies of manufacturing and use is nearly always a desideratum." The board also directed attention to the fact that while appellant used a knurled or roughened outer surface in securing his bonding, such use did not appear to be the only method by which bonding could be attained, and that bonding must occur in appellee's disclosure, since his ring is secured in the body by moulding.

The limitations of the counts appear to be clearly disclosed by appellee. His drawings show that all parts of his construction are concentric, and the testimony shows that his outer bearing ring is a continuous one piece ring. Since the structures disclosed by both parties, as

hereinbefore noted, are substantially the same, the functions thereof would be substantially and inherently the same. Accordingly, the court finds no manifest error in the concurring decisions of the tribunals of the Patent Office with respect to their disposition of appellant's motion to dissolve the interference.

The significant acts by which the status of appellee was acquired in the present controversy involve appellee's relations with his assignee, The Fafnir Bearing Company, of New Britian, Connecticut, and the Micarta division of the Westinghouse Electric & Manufacturing Company, of Trafford, Pennsylvania, hereinafter respectively referred to as Fafnir and Westinghouse. The Board of Interference Examiners held that such acts all occurred beginning about April, 1939, but the dates of such activities were not considered critical by the board and it made no attempt to fix the precise date for any particular activity.

The evidence discloses that for many years Fafnir had manufactured and sold complete ball bearing assemblies to Westinghouse, which Westinghouse assembled in control pulleys by pressing the bearings into brass bushings, which in turn had been molded in place in pulley bodies; that Westinghouse marketed the completed pulleys as its product; that because of the volume of trade that had been developed in the sale of the product, the competitive situation attracted a cheap ball bearing marketed in the early part of 1939 by a competitor; that the price spread between the two products was so great that Fafnir and Westinghouse decided that if they wanted to remain in a competitive position, they would have to reduce the cost of their ball bearing pulley combination; that Fafnir at that particular time was selling the bearings to Westinghouse "by the millions" and it looked as though Fafnir would lose a very profitable market; that appellee discussed the problem with Westinghouse and in the over-all discussion he came up with the suggestion that the pulley should be molded directly around the outer bearing ring, after which the raceway groove in the outer bearing ring was to be ground and the assembly of the bearing completed.

The evidence discloses further that Fafnir and Westinghouse joined in the development of a program to meet the situation whereby Fafnir supplied the hardened outer bearing rings to Westinghouse, and Westinghouse molded the pulley bodies about such rings and thereafter cut the pulley groove in the pulley body; the assemblies were then returned to Fafnir and Fafnir ground the raceway in the outer ring concentric with the finished pulley groove, assembled the inner bearing rings and balls with the outer rings, and the ball bearing pulleys thus completed were returned to Westinghouse and successfully tested by it in accordance with Army and Navy specifications for aircraft control pulleys.

The board held, in view of the record, that appellee had established conception and reduction to practice of the subject matter of the counts by October of the year 1939. Appellant contends that the testimony introduced on behalf of appellee does not support that holding. More specifically, appellant urges that there are no details in the testimony with respect to the precise instructions given by appellee for the preparation of the drawings constituting appellee's Exhibits 1 to 12, inclusive, or that appellee had anything to do with the tests conducted by Westinghouse or that they were performed in his behalf. The import of appellant's argument is that appellee's evidence does not constitute proof that appellee conceived the invention defined by the counts and reduced it to practice, but proves that whatever was accomplished with respect thereto was solely the development of Westinghouse, which did not inure to the benefit of appellee.

There is no dispute that appellee was vice president of the Fafnir company, and the testimony establishes that the drawings, appellee's Exhibits 1 to 12, inclusive, showing various forms and sizes of rings molded directly in the pulley body, were made at the direction of appellee. In the earlier part of 1939, appellee gave the instructions for the preparation of the drawings to his assistant Smith, who in turn gave such instructions to Noe, a draftsman and engineer employed by Fafnir, and he together with another employee of Fafnir,

Zotter, made the drawings and dated them on the dates stated upon the drawings, the first being dated "3/31/39" and the last "6/27/39." All of those drawings, according to the testimony, were checked by the witness Hadden, another draftsman and checker employed by Fafnir, on or about the dates noted on the drawings; but before some of such drawings were made, a number of hardened rings were supplied to Westinghouse by Fafnir in the early part of April, 1939, in accordance with the joint program of development entered into and carried out between Fafnir and Westinghouse, as hereinbefore described.

The record makes it clear that the drawings made by Fafnir's employees, and embodying the invention defined by the counts, were made with appellee's knowledge and in accordance with the general directions he gave to such employees for the preparation thereof, and that the tests in question were conducted by Westinghouse with the cooperation of Fafnir engineers under a relationship between the two corporations such as would cause the tests to inure to the benefit of appellee and Fafnir, his assignee. See Borglin v. Palmer, 70 F.2d 899, 21 C.C.P.A., Patents, 1109, and authorities therein cited.

Furthermore, with reference to appellant's contention that appellee and his associates Fafnir and Westinghouse had no objects for their development other than to meet competition by lowering the cost of their pulley, by making it lighter in weight and eliminating the brass bushing, it is noted that appellant in his specification states that his construction likewise "permits the use of softer and cheaper materials for the cast or molded or otherwise formed ring support and pulley body" and "also eliminates a large number of chucking and finishing operations required in making the standard antifriction bearing."

■ The testimony on behalf of appellant with respect to his diligence was to the effect that after his date of conception on September 2, 1935, appellant was continuously working on the development of his invention until he took information and data to his patent attorney on May 29, 1940, and filed his first application, No. 357,-

107, on September 17, 1940. Appellant alleges that during those intervening years he made various sketches and studies, and he introduced in evidence various exhibits to establish diligence on his part during the critical period. However, an inventor's testimony on the question of diligence must be corroborated. See Patterson et al. v. Clements et al., 136 F.2d 1002, 30 C.C.P.A., Patents, 1262.

Edgar W. Bassick, Chairman of the Board of the Bridgeport People's Savings Bank, testified that in the first part of the year 1939 appellant came to Bassick and showed him a new development, such as defined by the counts in issue, and that Bassick's association with those articles has been continuous from that time; that he was willing to furnish appellant all reasonable financial backing for his invention; that Bassick tried to get others, including a great many industrial concerns, interested in appellant's ideas or articles, and that in 1941 the matter was taken up with the Government in Washington. In fact, the testimony on behalf of appellant shows that he spent considerable time in developing machines for producing his bearings and in commercializing an invention which he had failed to reduce to practice. Such activities on the part of appellant do not tend to establish the required diligence in reducing the invention to practice. Petersen v. Thomas, 56 App.D.C. 113, 10 F.2d 908; Schweyer v. Thomas, 68 F.2d 953, 21 C.C.P.A., Patents, 859.

The testimony of appellant's other corroborating witnesses, namely, his wife and son, was of a general nature to the effect that appellant from the time of his conception worked continuously on the development of his idea. Their evidence, which was not specific as to dates and facts, does not constitute the kind of corroboratory evidence required to establish appellant's diligence during the critical period.

A careful consideration of the facts and authorities presented in this appeal fails to convince the court that there was manifest error in the decision of the Board of Interference Examiners. In view of that conclusion, it is deemed unnecessary to discuss other points raised by counsel for the respective parties. Accordingly, the decision of the board awarding priority of invention to appellee of the subject matter of the counts in issue is affirmed.

Affirmed.